Honorable William **SHEFFIELD**, Governor, State of Alaska; **Eleanor Andrews**, Commissioner, Department of Administration, State of Alaska; Department of Administration, State of Alaska; Public Employees' Retirement Board, State of Alaska; and the State of Alaska, Appellants,

v.

**ALASKA PUBLIC EMPLOYEES' ASSOCIATION, INC.**, a non-profit corporation; **Robert S. Moffat**; **Vernon L. Heikenn**; **Albert F. Detmer**; and **Gary L. Teseneer**, Appellees.

No. S–1238.

Supreme Court of Alaska.

Feb. 20, 1987.

Virginia B. Ragle, Asst. Atty. Gen., and Harold M. Brown, Atty. Gen., Juneau, for appellants.

John B. Gaguine, Juneau, for appellees.

Constance E. Livsey, Jermain, Dunnagan & Owens, Anchorage, for amicus curiae.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

RABINOWITZ, Chief Justice.

The issue presented is whether the Alaska Public Employees' Retirement Board may compute early retirement benefits for an employee according to actuarial factors adopted subsequent to the commencement of his employment by the state and prior to his retirement, when such computation reduces the amount of early retirement benefits the employee would receive when compared to payments calculated under the actuarial factors operative at the time of commencement of his state employment. The superior court held that article XII, section 7 of the Alaska Constitution prohibits such a reduction in employees' retirement benefits. We affirm.

FACTS AND PROCEEDINGS BELOW

Prior to amendments effective in 1986, the Alaska Public Employees' Retirement System ("PERS") Act provided that a state employee with at least five years of credited service could elect early retirement at age fifty, subject to an actuarial adjustment of the amount of PERS benefits he or she would have received upon normal retirement at age fifty-five. AS 39.35.370(a)–(c) (1984) (amended 1986).[1] PERS defines "actuarial adjustment" to mean "equality in value of the aggregate expected pay-

ments under two different forms of pension payments, considering expected mortality and interest earnings on the basis of tables adopted from time to time by the [PERS] board." AS 39.35.680(2). The PERS board adopted a new table of actuarial factors effective January 1, 1981, based on then-current mortality and interest earnings data, which superseded the table in effect since 1972.

In August 1982, the Alaska Public Employees' Association ("APEA") and four of its members whose employment by the state began before January 1, 1981, filed this action seeking to enjoin the application of the new actuarial table to all PERS members similarly situated to the named individual plaintiffs.[2] APEA alleged that article XII, section 7 of the Alaska Constitution bars application of the new table to such employees because any of them taking early retirement on or after January 1, 1981, would receive lower monthly benefits than they would have received under the 1972 table of factors.[3] Alaska Const. art. XII, § 7 provides:

Membership in employee retirement systems of the State or its political subdivisions shall constitute a contractual relationship. Accrued benefits of these systems shall not be diminished or impaired.

The parties submitted the case for decision on cross-motions for summary judgment. Among the facts to which they stipulated was that the 1981 factors "come closer to achieving equality in value of aggregate payments as between early and normal retirement than would be possible under the old factors...." The superior

1. The terms of AS 39.35.370 relating to eligibility for, and computation of, retirement benefits for public safety employees and employees with at least thirty years of credited service vary from the foregoing description. This case does not implicate these variations. We also note that although the 1986 PERS amendments affect an employee's age of eligibility and computation of his benefits, they are immaterial to the issue presented in this appeal. *See* ch. 82, §§ 22–25, SLA 1986.

2. Only the rights of employees who had not yet retired prior to January 1, 1981, are involved in

this case. The state has not attempted to apply the new actuarial factors to employees who had already taken early retirement as of that date.

3. For example, application of the 1972 table to a PERS member taking early retirement at age fifty would entitle him to seventy percent of the normal retirement benefits to which he would be entitled (assuming the same number of years of service); the same retiree would receive approximately sixty-seven percent of his normal benefits under the 1981 table.

court denied the state's motion and granted APEA's motion for summary judgment in a Memorandum Decision and Order issued June 4, 1985. Adhering to our prior ruling that an employee's right to PERS benefits vests upon employment and enrollment in the PERS system,[4] the superior court held that the state could not constitutionally apply the new actuarial factors to employees whose rights vested prior to January 1, 1981.[5] This appeal followed.[6]

DISCUSSION

*Hammond v. Hoffbeck,* 627 P.2d 1052 (Alaska 1981), controls the disposition of this case. In *Hoffbeck,* this court held that an employee's right to PERS benefits vests upon employment and enrollment in the PERS system rather than at the time when he or she is eligible to receive benefits, and that any changes in the system that operate to a given employee's disadvantage must be offset by comparable advantages to that employee. *Id.* at 1056–57. A diminution in an employee's vested right[7] to benefits is constitutionally infirm under Alaska Const. art. XII, § 7, if it is not outweighed by comparable advantages. *Id.* at 1059. Of particular relevance to the solution of this case is the fact that in *Hoffbeck* we stated that the vested rights protected by this section "necessarily include ... the *dollar amount* of the benefits payable...." *Id.* at 1058 (emphasis added).

The state attempts to distinguish *Hoffbeck* on the ground that the case involved a statutory amendment which reduced the percentage of monthly salary according to which the benefits of certain retirees were calculated, whereas the PERS provisions in issue here do not promise a specific amount of early retirement benefits but merely an early benefit "equal in value" to the normal benefit the employee would have received upon retirement at age fifty-five with the same number of years of service. The state in effect argues that no reduction in the benefits to which early retirees are entitled has occurred.[8]

4. *See Hammond v. Hoffbeck,* 627 P.2d 1052, 1057 (Alaska 1981).

   AS 39.35.120(a) provides that a state employee shall be included in the PERS system upon commencement of employment with the state, or on January 1, 1961, whichever is later; an employee of a political subdivision or public organization shall be included on the effective date of the employer's participation or the date of the employee's commencement of employment with the employer, whichever is later. Inclusion in the PERS system is a condition of employment for all state employees, except as otherwise provided for elective officials. AS 39.35.120(b).

5. We note that APEA does not argue that the actuarial factors employed prior to 1972 be applied to employees who commenced employment (and whose rights to benefits therefore vested) before the effective date of the 1972 actuarial table; APEA confines its argument to the choice between the 1972 and 1981 tables. It challenges the application of the 1981 table to pre–1981 employees regardless of how long they have been PERS members. (The complaint alleges only that the named individual plaintiffs commenced employment before January 1, 1981.)

6. The superior court entered a stipulated final judgment under Alaska Civil Rule 54(b) granting APEA's claim for declaratory relief in order that this court could consider the constitutional question presented.

7. We have construed the phrase "accrued rights" in Alaska Const. art. XII, § 7 to be synonymous with "vested rights." *See id.* at 1055 n. 4, *citing Bidwell v. Scheele,* 355 P.2d 584, 586 (Alaska 1960).

8. More specifically, the state advances the contentions that any public employee enrolled in PERS prior to January 1, 1981 "contracted" under the PERS statutes to receive early retirement benefits in the amount of the benefits due him on normal retirement, adjusted actuarially to achieve "equality in value of the aggregate expected payments" under AS 39.35.680(2). Any such employee who elects early retirement on or after January 1, 1981, would receive that amount, computed according to current actuarial factors adopted by the board in accordance with the extant statutory scheme. On the average, early retirees would now receive their benefits over a longer period of time, and under changed interest earnings conditions, than would have been true under the actuarial conditions prevailing at the time the 1972 factors were adopted. The state also argues that the parties' stipulation that the 1981 actuarial factors come closer to achieving a "benefit of equal value" lends support to the conclusion that to apply the 1972 factors now would give such employees a windfall. Moreover, the state contends that no legislative change intending to reduce early retirees' benefits has transpired,

**1086**

Courts from other jurisdictions have endorsed the position argued by the state. In *King County Employees' Ass'n v. State Employees' Retirement Bd.*, 54 Wash.2d 1, 336 P.2d 387 (1959) (en banc), the Washington Supreme Court confronted a case in which computation of retirement benefits for female employees, under actuarial tables for female lives in lieu of the tables for male lives previously applied, resulted in a decrease in female employees' monthly benefit payments. The statutory scheme in issue was in most respects identical to the PERS provisions in issue here.[9] The court held that the new tables could be validly applied to all female employees who had not yet retired as of the effective date of the new tables; it reasoned that the employees had "acquired a contractual right to an annuity when they commenced employment under the provisions of the statute," but that

> one must look to the statute to determine what that annuity is.... The member, under the plain wording of the statute, does not acquire a vested contractual right to an annuity based on the mortality table in use when the employee became a member of the retirement system; rather, the employee acquires a vested right to "a benefit of equal value" to his or her accumulated contributions, which is to be paid on a monthly basis over the remainder of his or her life.

and that the statutory terms of their employment contract pertaining to retirement benefits remain unchanged. *Cf. Kraus v. Board of Trustees of Police Pension Fund*, 72 Ill.App.3d 833, 28 Ill.Dec. 691, 390 N.E.2d 1281, 1293 (1983) (legislative action, which reduced employees' salaries/hours and thus had effect of reducing pension benefits, upheld against challenge under Illinois analog to Alaska Const. art. XII, § 7, because action not aimed at reducing benefits; noting that employees' contract "may be made subject to any contingency, consistent with public policy, built into the contract").

**9.** At the time *King County* was decided, upon retirement in Washington a public employee began to draw a retirement allowance which included an annuity; the annuity was "the actuarial equivalent of his accumulated contributions *at the time of his retirement*," and "actuarial equivalent" was defined as a "benefit of equal value when computed upon the basis of such

Any computations based upon mortality tables rejected by the board—because from experience and actuarial investigation they did not properly reflect the life expectancy of retiring members—would be actuarially unsound, and would not give the employees what they had contracted for.

*Id.* 336 P.2d at 392. *See also Olson v. Cory*, 93 Cal.App.3d 942, 156 Cal.Rptr. 127, 134 (1979), *rev'd on other grounds*, 27 Cal.3d 203, 164 Cal.Rptr. 217, 609 P.2d 991 (1980), *quoting in part Casserly v. City of Oakland*, 6 Cal.2d 64, 56 P.2d 237, 239 (1936) ("[W]hen the pension is a floating or fluctuating pension, 'the right which [is] vested is the right to have the pension, not of a particular number of dollars, but 'equal to [a percentage] of the amount of salary attached to the rank,' whether it should be more or less than that attached to the rank when the contract of employment was made.' "); *cf. O'Neal v. Trustees, Springfield Firemen's Pension and Relief Fund*, 160 N.E.2d 563, 568 (Ohio C.P. Clark County 1959) ("[No] rights to any monies [contributed to the pension fund] result except as specifically provided by the statutes creating the fund and governing its operation.").

We do not, however, find the foregoing arguments sufficiently compelling to overcome the view we espoused in *Hoffbeck*.[10]

mortality and other tables as may be adopted by the retirement board." *See* 336 P.2d at 391–92, *citing* Wash.Rev.Code §§ 41.40.010 (as amended 1957), .190 (as amended 1955) (emphasis added). The Washington Supreme Court in *King County* interpreted the statutory language to mean that the annuity should be computed "on the basis of the mortality tables most recently adopted prior to the retirement of a member." *Id.*

**10.** In specific regard to *King County*, we offer no opinion as to the validity of any benefit plan that results in unequal annuity benefit payments for male and female employees who make equal contributions, in light of recent Supreme Court holdings invalidating similar schemes. *See Arizona Governing Comm. v. Norris*, 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983) (per curiam) (holding Title VII of the Civil Rights Act of 1964 prohibits an employer from offering its employees the option of

*Hoffbeck* requires that a determination of whether vested rights to benefits have been diminished be made on a case-by-case basis, and that any diminution be accompanied by corresponding advantages *to that employee. See* 627 P.2d at 1057, 1059. " 'The comparative analysis must ... focus on the particular employee whose own vested pension rights are involved,' and not on hypothetical cases." *Id.* at 1058, *quoting in part Betts v. Board of Admin. of Pub. Employees' Retirement Sys.,* 21 Cal.3d 859, 148 Cal.Rptr. 158, 582 P.2d 614, 617 (1978).

Although application of the 1981 actuarial factors to PERS members employed prior to 1981 and retiring thereafter will provide the average employee with the present value equivalent to benefits calculated under the 1972 factors, the actual amount of benefits received by any given individual PERS member will in fact be diminished.

Furthermore, we are not persuaded that substantive consequences should attach to the fact that the reduction of early retirees' benefits occurred by means of a change in the PERS implementing regulations rather than by legislative amendment. Even though the statutory terms embodying the employees' contracts remained unchanged, the effect on the individual employee is the same as if the statute had previously promised a specific dollar amount in benefits and that amount was reduced through the amendment process. We did not limit the requirement of comparable offsetting advantages delineated in *Hoffbeck* to changes in the PERS system effected by the legislature; the form of the change should be disregarded in favor of its impact. As stated by the Massachusetts Supreme Judicial Court in interpreting that state's law protecting employees' contractual rights to retirement benefits:

The minimal meaning ... is that the "contract" is formed when a person becomes a member by entering the employment, and he is entitled to have the level

of rights and benefits then in force *preserved in substance in his favor without any modification downwards....* When we speak of the level of rights and benefits protected by [this statute] we mean the *practical effect of the whole complex of provisions* not excluding the [employees' contributions], for an increase in the [rate thereof] is little different from a diminution of the allowance.

*Opinion of the Justices,* 364 Mass. 847, 303 N.E.2d 320, 327 (1973), *construing* Mass.Gen.Law ch. 32, § 25(5) (amended 1956) (emphasis added). Our holding here is consonant with both the express terms of and the principle embodied in *Hoffbeck,* where we stated that "the vested benefits protected by Alaska Const. Art. XII, § 7, necessarily include not only the dollar amount of the benefits payable, but the requirements for eligibility as well." 627 P.2d at 1058.

A New York Court of Appeals decision which addressed circumstances similar to those we face here provides significant support for our position. In *Birnbaum v. New York State Teachers Retirement Sys.,* 5 N.Y.2d 1, 176 N.Y.S.2d 984, 152 N.E.2d 241 (1958), the court faced a constitutional challenge to the adoption of an actuarial table for computing teachers' annuity benefits which would reduce those benefits below the amounts that the teachers would have received if the table in effect when they joined the system were used. The case arose under an amendment to the New York Constitution which provides in pertinent part:

After July first, nineteen hundred forty, membership in any pension or retirement system of the state ... shall be a contractual relationship, the benefits of which shall not be diminished or impaired.

N.Y. Const. art. V, § 7. The court held that this section precluded application of the new actuarial table to members of the

receiving retirement benefits from one of several companies selected by the employer, all of which pay to a woman lower monthly retirement benefits than to a man who has made the

same contributions); *Los Angeles Dep't of Water & Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) (holding Title VII prohibits an employer from requiring women to make

teachers' retirement system who entered the system before the date of the new actuarial table's promulgation, even though the statutes in effect at the time of adoption of the constitutional provision authorized the adoption of the new annuity tables.[11]

To reach this result, the *Birnbaum* court reasoned that the constitutional amendment was designed to overrule dictum in a prior New York decision which stated that a member's rights in a state pension or retirement system was subject to change or revocation at the will of the legislature until the member's retirement. 176 N.Y. S.2d at 989, 152 N.E.2d at 245. Since "[t]he purpose of the amendment was to fix the rights of an employee at the time he became a member of the system," the court ruled that "[t]he adoption of a mortality table which reduces ... the amount of the money payments he will receive from the Retirement System ... certainly effects a diminution and an impairment of the benefits of the Retirement System." *Id.* The court noted that to hold otherwise would mean the teachers "will continue to be exposed to the vicissitudes of actuarial experience in the future, and the defendants will be free to reduce still further the annuities of the teachers by the adoption of another mortality table." *Id.* 176 N.Y.S.2d at 990, 152 N.E.2d at 246.

As a matter of statutory construction [12] which arguably applies equally to the Alaska PERS scheme, the New York court concluded:

> While it is clear that section 508 contemplates a periodic review of the mortality tables to be used in determining the amounts of annuities to be allowed on the basis of the contributions of members, *the section nowhere declares that mortality tables adopted after a person has become a member of the system are to be employed in determining the annuity benefits to which such person is entitled upon retirement. Nor do we see that we should read such an intention into the statute.* The constitutional amendment ... prohibits official action during a public employment membership in a retirement system which adversely affects the amount of the retirement benefits payable to the members on retirement under laws and conditions existing at the time of his entrance into retirement system membership. If we are to construe section 508 of the Education Law as authorizing that which the Constitution prohibits, then, the statute must be held to have been superseded by the constitutional amendment. It seems to us that there is no necessity for so holding since it is reasonable to construe the Education Law as authorizing ... the use of the new mortality tables in the

larger contributions in order to obtain the same monthly pension benefits as men).

**11.** The New York statute provided for computation of the annuity part of a teacher's retirement allowance as "the actuarial equivalent of his accumulated contributions at the time of his retirement." *See Birnbaum,* 176 N.Y.S.2d at 988, 152 N.E.2d at 244, *quoting* N.Y. Education Law, § 510(2)(a). The *Birnbaum* court explained that "the term 'actuarial equivalent' has reference to the mathematical formula for computing annuity payments according to the mortality table calculated and adopted pursuant to [the statute]." 152 N.E.2d at 244.

**12.** The pertinent New York statute read in part as follows:

> Upon the basis of the mortality and service experience of the members and beneficiaries of the system, the retirement board from time to time shall adopt the tables to be used for

valuation purposes and for determining the amount of annuities to be allowed on the basis of the contributions of members.

At such times as the retirement board may deem it necessary and at least once each quinquennial period, the retirement board shall have prepared by a competent actuary familiar with retirement systems, a report showing a complete valuation of the present and prospective assets and liabilities of the various funds created by this article with the exception of the expense fund. The actuary shall make an investigation of the mortality and service experience of the members of the retirement system and shall report fully upon its conditions with such recommendations as he shall deem advisable for the information of the retirement board in the proper operation of the retirement system.

*See Birnbaum,* 176 N.Y.S.2d at 991, 152 N.E.2d at 246, *quoting* N.Y. Education Law § 508(4), (5).

computation of the annuities *of only such persons as enter the system thereafter.*

*Id.* 176 N.Y.S.2d at 991–92, 152 N.E.2d at 246–47 (emphasis of last line in original, remainder added). *Contra, King County,* 336 P.2d at 391–92; *Birnbaum,* 176 N.Y. S.2d at 994, 152 N.E.2d at 249 (Desmond, J., dissenting).

Finally, general considerations of equity weigh in favor of holding that *Hoffbeck* bars application of the 1981 table of actuarial factors to PERS members who were employed but had not taken early retirement as of the table's effective date. The following scenario posited by APEA illustrates the potential arbitrariness resulting from such application:

> [Consider] two employees who worked for the State for twenty-five years, who planned to retire at age fifty, and who relied since 1972 on receiving seventy percent of normal retirement (based on twenty-five years of service). One of these two was born in 1930, the other in 1931. The first gets his relied-upon seventy percent; the second sees his expectations dashed and gets three percent

less [even though] [f]rom an actuarial standpoint, the two are essentially the same.[13]

In conclusion, to hold that employees have a right only to early retirement benefits which are subject to actuarial changes until retirement would vitiate Alaska's constitutional protection of accrued benefits for those employees who anticipate early retirement: they could not count on any particular amount of pension but only that they will each receive one. We therefore hold that the plain meaning[14] of Alaska Const. art. XII, § 7 should be interpreted to cover the diminution in early retirement benefits at issue, without regard to the fact that the diminution is accomplished through regulations (the actuarial factors) contemplated by the PERS statutes. The decision of the superior court is therefore AFFIRMED.[15]

---

**13.** We note that although unforeseen by the parties, from a practical standpoint, our refusal to allow application of the new actuarial factors to employees enrolled in the PERS system as of the factors' effective date should create an incentive for the state to prevent the actuarial factors from becoming outdated by revising the table more frequently in order to avoid the fiscally undesirable position of being forced to apply the old factors to large numbers of employees. If the PERS board repeatedly revises the tables during the course of an employee's employment, we think the employee should be permitted to elect which of those tables will apply to the computation of his or her PERS early retirement benefits. *Cf. Hoffbeck,* 627 P.2d at 1059 n. 13 ("Upon remand the state is to give requisite notice to and a reasonable time for all those public safety employees affected to exercise their right to choose which system they desire to come under.").

**14.** *See Hoffbeck,* 627 P.2d at 1056 & n. 7.

**15.** We find APEA's arguments concerning employee expectations of a particular amount of benefits and equitable estoppel lacking in merit.

APEA argues that the 1972 early retirement factors constituted part of the employees' contract because the employees were not told prior

to 1981 that AS 39.35.370 conferred a right to an unspecified amount in early retirement benefits, but were told that upon retirement at age fifty they had a right to seventy percent of the normal benefit. In support of this argument, APEA cites the 1980 PERS booklet furnished to new employees to explain the benefits system, which set forth the 1972 early retirement factors as absolutes and did not specifically state that the factors are subject to change based on new actuarial data. However, the 1980 PERS booklet contained an express disclaimer that, "[i]f there is any difference of interpretation between this handbook and the actual text of either the laws or the Public Employees' Retirement Board Regulations governing the system, AS 39.35 and the Board Regulations shall take precedence." In addition, this booklet would have no relevance to the expectations of employees who joined the PERS system prior to the booklet's publication in 1980. Furthermore, an argument that retirees were "misled by propaganda" used by the retirement board to explain the retirement system to new members has been rejected by the Washington Supreme Court: "When one deals with a statutory board or commission, he is presumed to know the statutory limits of its vested authority; when he deals with such statutory body without ascertaining

those limits, he does so at his own peril." *King County*, 336 P.2d at 393 (citations omitted).

APEA also argues that the doctrine of equitable estoppel compels the PERS board to apply the 1972 factors to the employees in this case. A necessary prerequisite for application of equitable estoppel to a public entity such as the defendants herein is the assertion of a position by that public entity on which the plaintiffs reasonably relied. *Municipality of Anchorage v. Schneider*, 685 P.2d 94, 97 (Alaska 1984). The only "assertion" cited by APEA is the publication of the 1972 factors in the aforementioned PERS booklet "as immutable"; in this regard, *see Whaley v. State*, 438 P.2d 718, 720 (Alaska 1968) (any representation by state official contradicting explicit provision of personnel rule would be unauthorized and of no effect, and therefore state was not estopped from denying effect to the representation). APEA offers no evidence to show that PERS members reasonably relied on the 1972 factors.