195 P.3d 118 (2008)
Yvonne ALFORD, Bruce Campbell, Dick Chitty, Patrick Ryan, Ramon Shumway, Schuyler Stevens, Evadine Turner, Cheryl Wilson, and Lois Wier, Appellants,
v.
STATE of Alaska, DEPARTMENT OF ADMINISTRATION, DIVISION OF RETIREMENT AND BENEFITS, Appellee.
No. S-12644.
Supreme Court of Alaska.
October 16, 2008.
*119 Donna C. Willard, Law Offices of Donna C. Willard, Anchorage, for Appellants.
Virginia B. Ragle, Assistant Attorney General, and Talis J. Colberg, Attorney General, Juneau, for Appellee.
Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

OPINION
WINFREE, Justice.

I. INTRODUCTION
The appellants ("early retirees") are members or surviving beneficiaries of members of the Public Employees' Retirement System (PERS) who took early retirement before 1977, returned to work in public service, and later retired again. Asserting constitutional and statutory violations and unreasonable statutory interpretation, they now contest the manner in which the Division of Retirement and Benefits (the Division) calculated their retirement benefits, including the Division's decision to recapture pension benefit payments made during their early retirement.
We conclude that the Division's methodology (1) did not violate the anti-diminution provision of article XII, section 7 of the Alaska Constitution; (2) did not violate AS 39.35.520(b)'s prohibition against adjustments; and (3) was reasonable. We therefore affirm.

II. FACTS AND PROCEEDINGS

A. Facts
Calculation of PERS benefits when a public employee retires, returns to work, and then retires again is governed by AS 39.35.150. Since July 1, 1977, subsection.150(a) has provided that upon subsequent retirement, an employee is entitled to receive *120 an additional pension based on the credited service and average monthly compensation earned during the period of re-employment.[1] The second pension is added to the reinstated pension for the previous employment period.[2]
Before July 1, 1977, AS 39.35.150 consisted of two subsections.[3] Former subsection.150(a) provided:
(a) If a retired employee is re-employed on a regular full-time basis by an employer, no pension payments may be made during the period of re-employment. During the period of re-employment, deductions from salary may be made at the option of the retired employee for contributions to the retirement fund as provided in sec. 160 of this chapter. Upon the subsequent retirement of the retired employee, he is entitled to receive a pension based on his credited service and compensation before the date of his previous retirement. If a previously retired employee makes contributions to the fund during his re-employment, his additional credited service and compensation during the period of re-employment shall be included to determine his final retirement benefit.[[4]]
Former subsection .150(b) dictated how the Division should account for early retirement benefits previously received by a retiree:
(b) In the case of re-employment of an employee who retires under sec. 370(c) [normal retirement] or 380 [early retirement] of this chapter, the pension payable upon the employee's subsequent retirement shall be reduced by the actuarial equivalent of early retirement benefits previously received by the employee.[[5]]
"Actuarial equivalent" was then defined as:
equality in value of the aggregate expected payments under two different forms of pension payments, considering expected mortality and interest earnings on the basis of tables adopted from time to time by the board.[[6]]
In 1980 the Attorney General's office issued an opinion stating that the July 1, 1977 amendment changed the clear meaning of AS 39.35.150 and advised the Division to calculate retirement benefits differently depending on the employee's re-employment date. For retired members re-employed after July 1, 1977, the Division was advised to apply the new law to calculate pension benefits. For retired members re-employed before July 1, 1977, the Division was advised to "calculate a single pension based upon the total years of credited service, using the average monthly compensation for the entire period as defined in AS 39.35.680, reduced by the actuarial equivalent of benefits received under an earlier pension, as provided by AS 39.35.150 before the 1977 amendment."[7]
In 1981 the Attorney General's office affirmed its earlier opinion. The same year, we decided Hammond v. Hoffbeck, clarifying PERS members' constitutional rights under article XII, section 7 of the Alaska Constitution.[8] We held there that an employee's constitutional right to retirement benefits under PERS "vests immediately upon an employee's enrollment in that system," and that changes in the retirement system that disadvantage employees must be offset by "comparable new advantages."[9]
*121 Throughout the 1980s and 1990s, the Division continued to calculate second retirees' benefits by applying the newly enacted section.150. The Attorney General's office issued a third opinion in 1999, advising the Division to calculate benefits in accordance with its 1980 and 1981 decisions, as well as Hammond. In short, the Attorney General advised the Division to apply former section.150 when calculating the second retirement benefit for any member who had been in the PERS system before July 1, 1977, if doing so would result in a more favorable benefit for the retiree.
The Division later identified more than one hundred potentially affected second retirees or surviving beneficiaries. To determine which version of section .150 would result in a more favorable benefit to them, the Division calculated benefits under both the pre- and post-amendment statutes. But because the Division had been calculating benefits under the new law for more than twenty years, it did not have any guidelines in place to apply subsection .150(b) of the old law. Based on the statute's plain meaning, the Division interpreted the phrase "reduced by the actuarial equivalent of early retirement benefits previously received" to include "all the benefits that they received under the early retirement provision up to the date that they went back to work." When the Division used this method, it found that few early retirees would receive increased benefits because they had been retired with an early benefit for so long that the actuarial reduction "wiped out any increase they would have received."
Because the plain meaning application often failed to yield an advantageous result for members, the Division chose instead to apply the old law liberally in the second retirees' favor "by calculating the early retirement component as the amount [the retiree] received while in early retirement status until reaching age 55, the normal retirement date."[10] Under this approach, the Division first calculated the second retirees' benefits under subsection .150(a), then reduced their monthly pension payments only by the amount of early retirement benefits they received before reaching age fifty-five. This resulted in a monthly payment larger than the payment calculated under the new law.
The Division offered to pay the second retirees the back payments and additional ongoing benefits resulting from the recalculation, but because of a potential statute of limitations defense, it conditioned payment on the recipients' waiver of any claim to interest on the back payments. Affected retirees litigated the waiver requirements. The superior court ruled that the waivers were defective and voidable, any of the retirees could seek to void the waiver, but the Division then could assert its statute of limitations defenses.[11] The Division agreed to pay the interest and the parties settled the litigation. The settlement agreement required class members to pursue pension calculation disputes within two years of October 21, 2002.
The Division awarded each eligible second retiree or surviving beneficiary a lump sum payment or an actuarially increased benefit as compensation for past underpayments, interest, and increased benefits. Each also received an increased monthly benefit going forward. But, as required by subsection.150(b), the Division also began recapturing retirement benefits disbursed to those who originally had taken early retirement, including the early retirees in this case. As a result, while the early retirees received an increased benefit from the recalculation of the retirement benefit for their second round of employment, their original monthly benefits also were decreased to some extent to account for the "actuarial equivalent" recapture requirement of subsection .150(b).
The early retirees contacted the Division in May 2003 in an attempt to avoid subsection.150(b)'s recapture requirement. The Commissioner ultimately rejected the early retirees' arguments and denied their request to be exempted from the recapture requirement. *122 In November 2003 the Division granted the early retirees permission to appeal to the Board.

B. Proceedings
In early September 2004 the early retirees presented several arguments to the Board in support of their contention that they should not be subject to the former subsection.150(b) recapture requirement. They argued that the recapture: (1) violated the anti-diminution provision of Article XII, section 7 of the Alaska Constitution; (2) violated AS 35.39.520(b), which prohibits the Division from making certain "adjustments" to a retiree's pension; and (3) impinged on their vested right to elect early retirement under article XII, section 7 of the Alaska Constitution and Hammond v. Hoffbeck. They also made other arguments in favor of waiving the recapture requirement, including an allegation that the Division breached its fiduciary duty by initially miscalculating their pensions and failing to advise them of the effects of early retirement on their pensions. Finally, they maintained that they were entitled to hardship waivers of the recapture under AS 39.35.522.
In late December 2004 the Board upheld the Commission's decision, concluding that although Hammond mandates that a retiree is entitled to the best benefits system available during the retiree's tenure in a PERS-covered position, it does not permit a retiree to choose among the most advantageous provisions of each applicable system. The Board therefore decided that the early retirees were entitled to the more advantageous of the new law or the old law, not a combination of the two. The Board also concluded that the subsection .150(b) recapture requirement was not an impermissible "adjustment" within the meaning of subsection .520(b), and that the Division's mathematical and actuarial methodology for calculating recapture of early retirement benefits was reasonable.
The early retirees appealed to the superior court, which affirmed the Board's decision in February 2007. The early retirees now appeal from the superior court's decision.

III. STANDARD OF REVIEW
"When the superior court acts as an intermediate court of appeal in an administrative matter, we independently review and directly scrutinize the merits of the board's decision."[12] When reviewing constitutional questions, we apply our independent judgment.[13] We also exercise our independent judgment when we review questions of law that do not involve agency expertise.[14] In exercising our independent judgment, we adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[15]
We review questions of law involving agency expertise by applying the "reasonable basis" test under which we defer to the agency's statutory interpretation unless it is unreasonable.[16] We review administrative factual findings to ensure they are supported by substantial evidence.[17] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support the Board's conclusion."[18]

IV. DISCUSSION

A. The Division's Methodology Did Not Violate the Anti-Diminution Provisions of Article XII, Section 7 of the Alaska Constitution.
Article XII, section 7 of the Alaska Constitution provides that "[m]embership in employee retirement systems of the State or its political subdivisions shall constitute a contractual *123 relationship. Accrued benefits in these systems shall not be diminished or impaired."[19] It also mandates that "no law impairing the obligation of contracts ... shall be passed."[20]
In Hammond v. Hoffbeck, employees who entered the PERS system before 1976 contested the constitutionality of a 1976 statutory amendment reducing the amount of, and eligibility for, disability and death benefits under PERS.[21] We held that: (1) an employee's constitutional right to retirement benefits under PERS "vests immediately upon an employee's enrollment in that system";[22] (2) changes in the retirement system disadvantaging employees must be "offset by comparable new advantages";[23] and (3) an employee must be allowed to choose which system he or she desires to come under if the state does not provide an offsetting advantage.[24] We concluded that the 1976 amendment disadvantaged some employees' rights to the best death and disability benefits available but did not provide any offsetting advantages.[25] Because determination of whether vested benefit rights have been diminished must be made on a "case-by-case basis" by each affected individual rather than by the state,[26] we directed the state to give the affected employees notice and a reasonable time "to choose which system they desire[d] to come under."[27]
In Sheffield v. Alaska Public Employees' Association, we considered whether the Board properly calculated the appellants' early retirement benefits using actuarial factors adopted by regulation after they started working for the state, when doing so reduced the amount of early retirement benefits compared to payments calculated under the actuarial factors effective when they were initially hired.[28] We affirmed the superior court's decision that article XII, section 7 of the Alaska Constitution prohibited the reduction in benefits.[29] We held that Hammond did not limit the requirement of offsetting advantages to changes in the PERS system effected by the legislature; rather, the contract an employee enters into with the state for benefits encompasses "the practical effect of the whole complex of provisions."[30]
We reaffirmed the rule that a determination of whether vested rights to benefits have been diminished must be made on a case-by-case basis and "accompanied by corresponding advantages to that employee."[31] As in Hammond, we stated that the decision ultimately rested with the employee: "If the PERS board repeatedly revises the tables during the course of an employee's employment, we think the employee should be permitted to elect which of those tables will apply to the computation of his or her PERS early retirement benefits."[32]
The early retirees first argue that Hammond and Sheffield mean that they may "pick and choose" among statutory provisions to obtain the best combination of benefits. They point to the portion of the Board's decision that states: "[Article XII, section 7 of the Alaska Constitution] has been interpreted by the Alaska Supreme Court to preclude subsequent diminutions in benefits. A corollary to this principle is that an employee/retiree is entitled to the best benefits under PERS that arise during an employee's career following the initial hire into a position held by PERS." The early retirees interpret *124 "the best benefits under PERS that arise during an employee's career" very broadly to include any conceivable combination of factors, giving them the ability to pick and choose among the subsections of the various versions of section .150 in effect during their state service.
The early retirees also argue that the mathematical calculations the Division used to determine their pension payments resulted in a reduced pension benefit, violating article XII, section 7. Specifically, they assert that they are entitled to actuarial equivalence between their early (first) retirement and normal (second) retirement pensions, and that in recalculating their pensions under former subsection .150(b), the Division failed to meet that requirement. The early retirees present their own actuarial equivalence calculations using appellant Schuyler Stevens's pension as an example. Based on their math, Stevens now receives a base pension amount less than what he would have received if he had stayed retired and never returned to work. They argue that the Division never adequately explained how it arrived at the early retirement adjustment that it calculated for each of them and question the manner in which the state arrived at the "early retirement factor."
The Division argues that the case law interpreting article XII, section 7 of the Alaska Constitution does not entitle the early retirees to "pick and choose" among the provisions of former AS 39.35.150 when invoking the right to have that statute applied to the calculation of their benefits. It asserts that former subsections .150(a) and (b) are not severable from one another; rather, if the appellants demand the benefits of former subsection .150(a), they also must accept the costs inherent in the application of former subsection .150(b). The Division argues that it adequately explained its benefit calculations in letters and in worksheets provided to the appellants, by making the Division's actuarial consultant available to the appellants, and through testimony at the hearing before the Board.
We conclude that application of the recapture requirement of subsection .150(b) does not result in an unconstitutional diminution of benefits. Hammond and Sheffield direct that PERS members are entitled to the best benefits availableand that they are entitled to choose those benefits for themselvesbut are not so broad as to allow members to sever statutory provisions from one another and mix and match some or all of a statutory provision from one era with that of another. The early retirees' additional retirement benefits under former subsection.150(a) were "diminished" only to the extent that the Division accounted for repayment of early retirement benefits under former subsection .150(b). They still enjoy a net increase over what they would receive under the new version of AS 39.35.150. The Board therefore properly declined to sever and disregard subsection .150(b) when calculating retirement benefits under former AS 39.35.150. We affirm the Board's decision in this regard.
We also conclude that the Division's calculations were reasonable. Because the meaning of "actuarial equivalent" falls within the unique expertise of the PERS Board,[33] we review the Board's decision under the reasonable basis test. The Board concluded that the mathematical and actuarial methodology that the Division used when it calculated the recapture of early retirement benefits was reasonable. The Board noted that the definition of "actuarial equivalent" or "actuarial adjustment" was "not a model of clarity,"[34] but that it was persuaded that the Division had rendered a reasonable interpretation. It also noted that the Division's interpretation "equalized early retirement with normal retirement receipts and employed both a mortality table as well as an interest factor." In contrast, the early retirees' proposed calculations admittedly were "approximate" and did not include a factor to account for post-retirement pension adjustments. Moreover, the interpretation that the Division *125 ultimately adopteddefining early retirement as the time between the age at which the person took early retirement and reached age fifty-fivefavored the early retirees.
The Division's calculations were supported by and based on a quantifiable mathematical basis: actuarial equivalence, interest, and mortality. The Division applied a definition of "actuarial equivalent" that favored the early retirees. The "plain meaning application" required the Division to recoup nine to ten years of early retirement benefits from some of the early retirees while the Division's interpretation required it to recoup approximately four years of benefits in the most severe case. The Division's interpretation of "actuarial equivalent" is not unreasonable given these facts. We affirm the Board's decision on this issue.

B. The Division Did Not Violate Subsection.520(b)'s Prohibition Against Adjustments by Applying Former Subsection .150(b); Therefore, an Undue Hardship Waiver Was Inappropriate.
Former AS 39.35.520, in effect when the early retirees took final retirement and the Division recalculated their benefits, governs adjustments of a PERS member's benefit payments when an error is made in computing a benefit and the member received more or less than the amount to which he or she was entitled. It provides that "as far as practicable, future payments shall be adjusted so that the actuarial equivalent of the pension or benefit to which the employee or beneficiary was correctly entitled shall be paid."[35] It thus requires PERS members to repay funds that they received but to which they were not entitled.[36] But under former subsection .520(b), downward adjustment to recover benefits cannot be made if:
(1) the incorrect benefit was first paid two years or more before the member or beneficiary was notified of the error;
(2) the error was not the result of erroneous information supplied by the member or beneficiary; and
(3) the member or beneficiary did not have reasonable grounds to believe the amount of the benefit was in error.[[37]]
Former subsection .520(d) requires a member who owes the system money to pay interest on the amount owed if it is "the result of erroneous information supplied by the member or beneficiary, or the member or beneficiary had reasonable grounds to believe the amount of the benefit was in error."[38] Former subsection .522(a) permits the Board to grant a member a waiver of adjustments if the adjustment will, in the Board's opinion, cause the member undue hardship and if the circumstances satisfy several other criteria.[39]
In this case, the Board concluded that although the former subsection .150(b) recapture requirement reduced the early retirees' monthly pensions, it was not an "adjustment" prohibited by subsection .520(b) because it was merely the result of application of the old law:
[T]he only "adjustment"to the extent that a recalculation occurred-was the computation made under Old Law AS 39.35.150 pursuant to the settlement in the Turner case. Payments made to the appellants included application of Old Law subsection (b) provision relating to early retirement benefits. The fact that subsection (b) provided a lower amount to the appellants as a consequence of the Division's application of AS 39.35.150 in its entirety does not constitute a further adjustment within the meaning of AS 39.35.520 nor is it barred by AS 39.35.520. The Division is not seeking to adjust the Old Law payouts made; rather the issue is the base computation under Old Law AS 39.35.150.
The early retirees argue that the Division made two "adjustments" to their pension payments within the meaning of subsection *126 .520(b): one when it recalculated their pensions under former subsection .150(a), and the other when it reduced their pensions under former subsection .150(b) to account for the early retirement benefits they received. They assert that even if subsection.150(b) applies to them, subsection .520(b)'s two-year statute of limitations bars the state from recovering the early retirement benefits it disbursed to them no later than 1988. Alternatively, the early retirees argue that even if the subsection .520(b) statute of limitations does not bar former subsection.150(b)'s recapture requirement, the Board should have waived the recapture under former subsection .522(a) because it posed an undue hardship.
The early retirees further argue that even if the Division properly reclaimed their early retirement benefits, subsection .520(d) precludes the Division from charging them interest on the disbursed early retirement benefits. They contest the inclusion of a seven percent interest rate in the actuarial calculations used to arrive at the amount of early retirement funds owed to the Division. Finally, they contend that they should have been given an opportunity to pay off the early retirement indebtedness in a lump sum to avoid paying interest.
The Division argues that section .520 applies to recovery of benefits only when the PERS system has overpaid a member's benefit as a result of changes or errors in records, contributions, or benefit computations. It claims that the early retirees' monthly benefits increased simply because of the former subsection .150(a) recalculation, and therefore section .520 does not apply. The Division further counters that it considered only gross early retirement benefits, without interest, in determining the amount of early retirement benefits subject to former subsection.150(b)'s recapture requirement. Regarding the interest rate included in the actuarial calculations, the Division responds that it used the most advantageous factors in effect during the appellants' employment, and that the basis for actuarial factors is derived from 2 Alaska Administrative Code (AAC) 35.329, which explains the "basis of the assumptions for the reduced benefit actuarial adjustment factors" from the relevant periods, and sets the interest rate at six percent.[40] It concludes that members receive the benefits due them when it applies an actuarial factor that is based on mortality information and an interest assumption.
We conclude that the recalculation of member benefits under subsection .150(a) was not an "adjustment" triggering subsection.520(b). Assuming for the sake of argument that the Division erred when it calculated pensions during the 1980s and 1990s using the new law, and that the early retirees therefore incorrectly received lower pension payments, the error was corrected as required by subsection .520(a) when the Division recalculated their benefits under the old law. Once the Division applied subsection.150(a) to recalculate the early retirees' pensions, it was neither "a change or error in the records maintained by the system," nor "an error [] made in computing a benefit" when the Division applied subsection .150(b) to account for early retirement benefits already paid. Rather, the application of subsection.150(b) was merely the natural extension of applying former subsection .150(a). The Board correctly concluded that the changes resulting from the application of former section.150 were not an "adjustment" that required the recovery of benefits under subsections.520(a) and (b).
We also conclude that the early retirees' interest arguments are unavailing; no evidence suggests that the Division imposed interest based on subsection .520(d). Before the Board, the Division explained that it calculated the amount of early retirement benefits received by each appellant up to age fifty-five without including interest, but that an "interest assumption was embedded in the actuarial factor applied to that amount to determine the final ongoing monthly benefit." Division Retirement Manager Kathy Lea stated that it was a "standard actuarial practice" to embed seven percent interest in the actuarial factor to "reflect the time value of money"; 2 AAC 35.329 dictates the interest rates and guidelines for the actuarial calculation. *127 For these reasons, we conclude that the Division reasonably incorporated an interest factor into the calculations used to determine the early retirees' monthly early retirement recapture indebtedness.
Finally, the early retirees maintain that several "inequitable factors" required the Board to waive the application of subsection.150(b). They contend that a subsection.150(b) waiver is justified because of: (1) the effects of early retirement recapture on their federal income taxes; (2) the fact that they did not receive pension payments while they were re-employed; (3) the unjust enrichment of the retirement system, and (4) the harm visited on them because the Division did not advise them of the ramifications of returning to work. Because we have held that the application of former subsection .150(b) is not an "adjustment" under subsection .520(a), the early retirees are therefore not entitled to an undue hardship waiver under section .522. We affirm the Board's conclusion that a waiver is not appropriate in the early retirees' case.

C. The Early Retirees' Remaining Claims Are Not Properly Before Us.
The early retirees argued to the Board, and now argue to us, that the Division breached its fiduciary duty to them by failing to advise the early retirees of the nature and effect of the Division's calculations. The Board stated it was "without jurisdiction to provide `damage' relief to the appellants,"[41] and neither the Board nor the superior court addressed this claim. The early retirees do not argue that they can be awarded damages in these proceedings, but suggest the alleged breach of fiduciary duty during the Division's calculations caused them financial harm through adverse tax consequences. The early retirees retain the right to seek damages in a separate suit before a court with proper jurisdiction.
Appellants Yvonne Alford and Evadine Turner also raise independent arguments not directly related to the section .150(a) recalculation, but related to other components of the calculation of their retirement benefits. The record regarding their individual claims is not developed, nor is there any decision or ruling regarding them from which to appeal. Their claims are not properly before us,[42] but they also retain the right to pursue their claims in an appropriate forum.

V. CONCLUSION
We AFFIRM the Board's denial of the early retirees' claims.
MATTHEWS, Justice, not participating.
NOTES
[1] AS 39.35.150(a) (1977).
[2] Id.
[3] Former AS 39.35.150 (1974).
[4] Former AS 39.35.150(a) (1974) (emphasis added).
[5] Former AS 39.35.150(b) (1974).
[6] Former AS 39.35.680(1) (1960). The definition now appears in AS 39.35.680(2) and is substantively the same, but has been re-titled "actuarial adjustment."
[7] The State of Alaska Public Employees Retirement System Board adopted this interpretation in its November 1980 decision, In the Matter of the Appeal of Walter L. Kubley.
[8] Hammond v. Hoffbeck, 627 P.2d 1052, 1056-57 (Alaska 1981); see also Sheffield v. Alaska Pub. Employees' Ass'n, Inc., 732 P.2d 1083, 1085 (Alaska 1987).
[9] Hammond, 627 P.2d at 1056, 1057; see also Sheffield, 732 P.2d at 1085 (holding that the state cannot make changes to the retirement system that will diminish a member's benefits without providing an offsetting advantage).
[10] The applicable statute provided that early retirement age was fifty. See former AS 39.35.380 (1975).
[11] Turner v. State of Alaska, Dep't of Admin., Div. of Ret. & Benefits, No. 3AN-01-06171 Civ. (Alaska Super., April 2, 2002).
[12] Alyeska Pipeline Serv. Co. v. DeShong, 77 P.3d 1227, 1231 (Alaska 2003).
[13] McMullen v. Bell, 128 P.3d 186, 190 (Alaska 2006).
[14] Id.; see also Lopez v. Adm'r, Pub. Employees' Ret. Sys., 20 P.3d 568, 570 (Alaska 2001) ("Questions of law not involving agency expertise are reviewed under the `substitution of judgment' standard.").
[15] Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).
[16] Lopez, 20 P.3d at 570.
[17] Alyeska Pipeline, 77 P.3d at 1231.
[18] Lopez, 20 P.3d at 570 (citation omitted).
[19] Alaska Const. art. XII, § 7.
[20] Alaska Const. art. I, § 15.
[21] Hammond, 627 P.2d at 1053-55, 1059.
[22] Id. at 1057.
[23] Id.; see also Sheffield, 732 P.2d at 1085 (holding that the state cannot make changes to the retirement system that will diminish a member's benefit without providing an offsetting advantage).
[24] Hammond, 627 P.2d at 1058-59.
[25] Id. at 1059.
[26] Id.
[27] Id. at n. 13.
[28] Sheffield, 732 P.2d at 1084.
[29] Id. at 1084, 1089.
[30] Id. at 1087 (citation omitted).
[31] Id. (emphasis in original).
[32] Id. at 1089 n. 13.
[33] See former AS 39.35.040 (listing Board's powers and duties when it heard appellants' case). The Board has since been abolished. See Ch. 9, § 132, SLA 2005.
[34] See former AS 39.35.680(1) (1960).
[35] Former AS 39.35.520(a) (1960).
[36] Id.
[37] Former AS 39.35.520(b) (1984).
[38] Former AS 39.35.520(d) (1986).
[39] Former AS 39.35.522(a) (1980).
[40] 2 AAC 35.329(c), (d) (2007).
[41] The powers and duties of the PERS Board are defined in former AS 39.35.040, which did not permit the Board to consider breach of fiduciary duty claims. See former AS 39.35.040 (2004).
[42] This court ordinarily will not consider an issue raised for the first time on appeal. McMullen, 128 P.3d at 190.