*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| PETER METCALFE, Individually and on behalf of All Others Similarly Situated, | ) ) ) | Supreme Court Nos. S-15528/S-15557 |
| Appellant, | ) ) | Superior Court No. 1JU-13-00733 CI |
| v. | ) ) | O P I N I O N |
| STATE OF ALASKA, | ) ) | No. 7132 – November 4, 2016 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Trevor Stephens, Judge.

Appearances: Jon Choate, Choate Law Firm LLC, Juneau, for Appellant. Kevin T. Wakley, Assistant Attorney General, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree and Maassen, Justices. [Stowers and Bolger, Justices, not participating.]

WINFREE, Justice.
FABE, Chief Justice, concurring in part and dissenting in part.

## I. INTRODUCTION

We previously have held that the legislature cannot diminish a state employee's accrued retirement benefits.[1]  We also previously have held that if the legislature diminishes retirement benefits, those affected may choose between their existing benefits and the new benefits.[2]  The primary issue in this case is whether a breach of contract damages claim can arise when existing retirement benefits are diminished.  We hold there can be no such claim.  The secondary issue is whether a claim for declaratory and injunctive relief against the diminishment of existing retirement benefits is subject to a statute of limitations defense.  We hold it is not.  Here the superior court dismissed a contract damages claim and a claim for declaratory and injunctive relief based on a statute of limitations defense.  We affirm dismissal of the contract damages claim on the alternative ground that no such claim exists; we reverse and remand the declaratory and injunctive relief claim for further proceedings.

## II. FACTS AND PROCEEDINGS

Peter Metcalfe was employed briefly by the State in the early 1970s and contributed to the Public Employees' Retirement System (PERS). In 1981 Metcalfe took a refund of his PERS contributions.  Under a statute in effect during Metcalfe's employment and when he took his PERS refund, if Metcalfe later secured State

---

[1]     *Hammond v. Hoffbeck*, 627 P.2d 1052, 1055-57 (Alaska 1981) (holding that when accrued state retirement benefits are modified any adverse effects must be offset by comparable new advantages to survive art. XII, § 7 challenge).

[2]     *McMullen v. Bell*, 128 P.3d 186, 190-91 (Alaska 2006) ("Where the state has changed the benefits system after an employee's enrollment in the system, the employee may choose to accept the new system or may opt to keep the benefits in effect at enrollment."); *see also Hammond*, 627 P.2d at 1059 (holding retirement benefits modifications constitutionally infirm, and thus inapplicable, to members electing to receive unmodified benefits).

employment and returned his refund to PERS with interest, he was entitled to reinstate at his prior PERS service tier and credit.[3] But in 2005 the legislature repealed that statute, leaving a five-year grace period for regaining State employment and reinstating to a prior PERS status.[4] The State then sent notice to former PERS members that "[d]efined benefit members who do not return to covered employment before July 1, 2010 will forfeit their defined benefit tier and all service associated with the refund."

In 2012 Metcalfe inquired about his PERS status. He was informed that even if he were to regain State employment, he could not reinstate to his prior PERS service tier and credit because AS 39.35.350 had been repealed in 2005 and the grace period for reinstatement had ended in 2010. In June 2013 Metcalfe brought a putative class action lawsuit against the State, alleging that the 2005 legislation: (1) violated article XII, section 7 of the Alaska Constitution;[5] (2) deprived a class of former employees of their vested interest in the contractual "benefit to be reinstated to state employment at the tier level they previously held";[6] and (3) effectively breached the class

---

[3] *See* former AS 39.35.350(b) (1980) ("An employee may reinstate credited service associated with a refund by repaying the total amount of the refund. Interest will accrue from the date of the refund until repayment of the refund or retirement, whichever occurs first."); former AS 39.35.350 (1970) ("[T]he employee is entitled to the credited service he had accumulated at the time of his last termination, if the employee makes a contribution to the system equal to the amount of the refund paid upon his last termination . . . together with interest . . . .").

[4] Ch. 9, §§ 133, 149 FSSLA 2005.

[5] Article XII, § 7 provides: "Membership in employee retirement systems of the State or its political subdivisions shall constitute a contractual relationship. Accrued benefits of these systems shall not be diminished or impaired."

[6] *Cf. Hammond*, 627 P.2d at 1057 ("[B]enefits under PERS are in the nature of deferred compensation and . . . the right to such benefits vests immediately upon an
(continued...)

members' employment contracts. Metcalfe sought damages, but he also asked for a seemingly mutually exclusive declaratory judgment that the State must comply with former AS 39.35.350.[7] The class was never certified.

The State moved to dismiss Metcalfe's lawsuit for failure to state a claim upon which relief could be granted,[8] arguing that: (1) Metcalfe did not have standing to sue because article XII, section 7 of the Alaska Constitution protects only PERS members and Metcalfe no longer was a PERS member after he took a refund of his contributions; (2) Metcalfe's claim was not ripe because he had not secured reemployment with the State and thus failed to meet former AS 39.35.350's PERS reinstatement requirements; and (3) the contract statute of limitations barred Metcalfe's claim because the legislation was passed in 2005 but Metcalfe did not sue until 2013.[9] The superior court tentatively rejected the argument that Metcalfe failed to state a claim

---

[6]     (...continued)
employee's enrollment in that system.").

[7]     *Cf. McMullen*, 128 P.3d at 191 ("Where the state has changed the benefits system after an employee's enrollment in the system, the employee may choose to accept the new system or may opt to keep the benefits in effect at enrollment.").

[8]     *See* Alaska R. Civ P. 12(b)(6) (allowing certain dismissal motions, including those for "failure to state a claim upon which relief can be granted," to be made in lieu of an answer).

[9]     *See* AS 09.10.053 ("Unless the action is commenced within three years, a person may not bring an action upon a contract or liability, express or implied, except as provided in AS 09.10.040, or as otherwise provided by law, or, except if the provisions of this section are waived by contract.").

upon which relief could be granted, rejected the argument that Metcalfe's claim was not ripe and that he lacked standing, but dismissed Metcalfe's claim as time barred.[10]

Metcalfe appealed the superior court's dismissal of his claim based on the statute of limitations. The State cross-appealed the superior court's ruling that Metcalfe's claim was ripe and argued that the superior court's decision could be upheld on the ground that Metcalfe lacked standing to sue. After oral argument we requested supplemental briefing primarily addressing two questions: (1) can a claim for diminution in value of a contract right exist in this context, and (2) can a statute of limitations defense apply to a claim for declaratory and injunctive relief prohibiting the enforcement of a statute alleged to be in violation of article XII, section 7?

## III. DISCUSSION

### A. Arguments In The Superior Court

Metcalfe's complaint contained a lengthy recitation of facts and law asserting that the 2005 legislation violated the Alaska Constitution. But Metcalfe's claim primarily was that he was entitled to damages because the 2005 legislation breached his PERS contract. A single reference to declaratory judgment was included in the ultimate prayer for relief, essentially asking the court to order the State to honor former AS 39.35.350.[11]

---

[10] The parties agreed and the superior court concluded that the three-year contract statute of limitations applied to Metcalfe's claim. *See supra* note 9.

[11] *Cf. Laverty v. Alaska R.R. Corp.*, 13 P.3d 725, 729-30 (Alaska 2000) (noting Alaska's Declaratory Judgment Act (AS 22.10.020(g)) authorizes courts "to declare rights without granting a separate legal or equitable remedy" and that it may be appropriate "to determine the validity and construction of statutes," but that a requested declaration must "be associated with an actual case or controversy" and "not open the door for hypothetical adjudications, advisory opinions, or answers to moot questions").

When the State moved to dismiss Metcalfe's claim, Metcalfe affirmatively asserted that his "claim is for breach of contract" and that it has "significant value," without any reference to a separate declaratory judgment that the State must honor former AS 39.35.350. Metcalfe argued that former AS 39.35.350's provision for future reinstatement at previous PERS service and tier levels was a constitutionally based contract right that — despite his withdrawal from the PERS system — had not been relinquished, giving him standing to sue the State for impairment of that right. He contended that the State had breached the contract on June 30, 2010 when former AS 39.35.350 finally was extinguished based on the earlier 2005 legislation. He reasoned that the contract claim became ripe on July 1, 2010, and therefore that his June 27, 2013 lawsuit was within the three-year statute of limitations. Although acknowledging that "the value of [his contract right] may seem abstract," Metcalfe argued that projected State savings from the statutory change, in excess of $100 million per year for medical insurance premiums alone, "grounds the financial value firmly in fact."

The superior court made a "tentative" determination that Metcalfe had a vested reinstatement right under former AS 39.35.350, but noted need for further briefing on this issue if the case were to proceed. The court then concluded that this assumed vested right gave Metcalfe standing to sue and that, given the allegation that the 2005 legislation breached Metcalfe's PERS contract and diminished the assumed vested right's value, his claim was ripe. The court also noted that to the extent Metcalfe sought declaratory relief, it was for the court to determine whether the State had breached his PERS contract. But the court concluded that Metcalfe's breach of contract claim accrued in 2005 when former AS 39.35.350 was repealed — not at the close of the five-year grace period — because the alleged lifetime reinstatement right had been diminished immediately when the 2005 legislation limited it to the five-year grace period and

Metcalfe reasonably should have discovered the ability to bring his claim then. The court noted that Metcalfe had at least constructive notice of his claim in 2005 and had not argued either that he did not have notice or that the statute of limitations should be tolled. The court therefore dismissed Metcalfe's claim as barred by the three-year statute of limitations.

Metcalfe then filed a reconsideration motion asserting that the superior court had overlooked a critical proposition of law. Metcalfe argued specifically that the 2005 legislation actually had not been a breach of his contract but rather was a repudiation of that contract allowing him to sue either when he chose to assert the breach or when the State's performance was due. Metcalfe's new legal theory, based on Restatement (Second) of Contracts § 250[12] and *Franconia Associates v. United States*,[13]

---

[12] The Restatement (Second) of Contracts defines repudiation as:

(a) a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach . . . , or

(b) a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach.

RESTATEMENT (SECOND) OF CONTRACTS § 250 (AM. LAW INST. 1981).

[13] 536 U.S. 129 (2002). In *Franconia* property owners had received low-interest federal loans to provide low-income rental housing, subject to various restrictions; the promissory notes allowed prepayment and release from those restrictions. *Id.* at 132-35. Concerned with low-income housing loss due to loan prepayments, Congress amended relevant laws to prohibit acceptance of prepayment unless the property owner agreed to maintain the low-income rental use of the property for a specified period of time. *Id.* at 135-36. Nine years after the statutory amendment and related regulations were implemented some property owners sued, arguing that (1) the new law was a repudiation of their contracts and an inverse condemnation of their property rights, and (2) they had the right to execute their options to prepay their loans
(continued...)

was different from his pleaded allegations, his opposition to the State's dismissal motion, and his prior litigation position that the repeal of former AS 39.35.350 was a fait accompli supporting a contract damages claim. And Metcalfe still made no reference to declaratory judgment in connection with his new theory.

The State opposed reconsideration, responding that Metcalfe's repudiation argument was inconsistent with his claim that "his rights were diminished *immediately* upon the enactment of SB 141." (Emphasis in original.) It also argued that *Franconia* was distinguishable and that Metcalfe's new repudiation argument was at odds with his position that the 2005 legislation had devalued his contract right and caused him immediate harm.

The superior court denied Metcalfe's reconsideration motion. The court concluded *Franconia* was not controlling and was distinguishable because it did not involve retirement system contract rights, and noted the majority federal rule that a claim for wrongful changes to a retirement program accrues when a clear repudiation of retirees' rights is made known. More importantly the court did not believe that the 2005 legislation was a "mere anticipatory repudiation":

> [I]n any event, the court is not persuaded that the passage of [the 2005 legislation] constituted a mere anticipatory repudiation. The gist of Mr. Metcalfe's claim is that [the 2005 legislation] violated [a]rticle XII, § 7. Such a violation would have occurred when [the 2005 legislation] was enacted as [it] would have immediately diminished an

---

**13** (...continued)
and escape the prepayment restrictions. *Id.* at 133, 138. The Court of Federal Claims dismissed the suit based on a six-year statute of limitations and the Circuit Court affirmed. *Id.* at 138. The Supreme Court reversed, concluding that the statutory amendment was not an immediate breach of contract, but rather a repudiation allowing the property owners to elect to treat the repudiation as a breach before the government's performance date or to await the performance date. *Id.* at 142-44.

accrued retirement benefit. Moreover, if viewed in conventional contract terms, if Mr. Metcalfe has a state Constitution based retirement benefit accruing at the time of his initial State hire to repay his PERS contribution and be reinstated to his former retirement tier if ever rehired by the State at any time, [the 2005 legislation] breached the contract when enacted as it immediately removed this "any time" right. This view is consistent with Mr. Metcalfe's own arguments with respect to the State's lack of ripeness and lack of standing claims. To the extent that *Franconia* holds otherwise the court does not find it persuasive. (Footnote omitted.)

The superior court stated that its order "appears to conclude this litigation," and it concurrently entered a separate final judgment. Nothing in the record reflects that Metcalfe challenged the final judgment that concluded the superior court litigation; Metcalfe did not argue that he had any claims not yet litigated, such as a claim for a declaratory judgment that the State must honor former AS 39.35.350.

## B. Arguments On Appeal

Metcalfe initially argued in his briefing to us that two theories prevent his contract damages claim being barred by the statute of limitations. One is that through the 2005 legislation the State violated its contractual obligation not to diminish or impair his reinstatement right without an equivalent offsetting benefit; this resulted in a contract breach on June 30, 2010, the final grace period day for reinstatement under former AS 39.35.350. The other is that the State has repudiated but not yet breached its contractual obligation to reinstate Metcalfe upon his future reemployment and repayment of his refunded PERS contributions — and that this repudiation allows him to sue for damages any time before the State's performance otherwise would be due and to seek contract damages even though he has not been rehired by the State (or tendered repayment of his withdrawn PERS contributions). But he nonetheless characterizes the

damages for each contract claim in the same manner: the diminution in value of his alleged lifetime PERS reinstatement rights under former AS 39.35.350.

The phrase "declaratory judgment" cannot be found anywhere in the argument sections of Metcalfe's opening and reply briefs. He did not contest the superior court's determination that his request for declaratory relief was only a reiteration of his contention that his contract had been breached and he was entitled to damages. Nor did he argue that the superior court erred by not entering a declaratory judgment that the State must honor former AS 39.35.350.[14]

On the other hand the superior court expressly noted that Metcalfe was bringing a claim for declaratory relief regarding the 2005 legislation. The court determined that Metcalfe had standing to seek declaratory relief because he presented an actual controversy ripe for decision — his claim was based on an asserted constitutional interest already subject to diminishment. And in its cross-appeal the State argued that if the superior court erred in its statute of limitations ruling, we should affirm the dismissal of Metcalfe's lawsuit because he did not have standing to bring a claim for declaratory judgment and his claim was not ripe for declaratory relief. Metcalfe disputed the State's arguments but his response did not focus directly on its argument against declaratory relief.

In response to our order for supplemental briefing, Metcalfe directed us to article XII, section 7 cases in which we have either permitted a breach of contract claim alongside a claim for declaratory and injunctive relief or applied contract-law principles in deciding the case. Metcalfe characterized his claim for damages and declaratory and

---

[14]    *Cf. Laverty*, 13 P.3d at 730, 738 (noting laches-based denial of associated equitable relief "does not necessarily mean that an accompanying claim for declaratory relief should also be blocked" and concluding superior court had not abused its discretion in reaching declaratory judgment claim).

injunctive relief as seeking remedies for two separate harms: a remedy at law for one harm, a breach of contract and resulting injury occurring while the 2005 legislation has been in effect; and an equitable remedy for the other harm, a declaratory and injunctive relief prohibiting future enforcement of the 2005 legislation. Metcalfe asserted that no statute of limitations applies to his claim for declaratory and injunctive relief because such a claim seeks to prevent a future harm. The State countered that even if Metcalfe's declaratory and injunctive relief claim could survive dismissal based on the statute of limitations, the claim could not survive the State's other defenses. Both parties also urged us to decide the actual merits of Metcalfe's statutory diminution claim if we determine the claim was dismissed in error.

### C.     Decision

#### 1.     Metcalfe has no right to diminution of value damages based on a claim that the 2005 legislation was a breach of the PERS contract.

We have not previously recognized a constitutional claim for damages for a violation of article XII, section 7.[15] In *Hammond v. Hoffbeck*[16] we interpreted article XII, section 7 to mean that members' retirement system rights accrue upon employment and enrollment[17] and noted our view that the protected benefit rights include "requirements for eligibility."[18] We recognized that retirement systems require some

---

[15]     "[W]e apply our independent judgment to questions of law presented by constitutional issues." *Majaev v. State*, 223 P.3d 629, 631 (Alaska 2010) (citations omitted).

[16]     627 P.2d 1052 (Alaska 1981).

[17]     *Id.* at 1055-57.

[18]     *Id.* at 1058; *see also Sheffield v. Alaska Pub. Emps.' Ass'n*, 732 P.2d 1083, 1087 (Alaska 1987) (stating that constitutionally protected retirement benefits include
(continued...)

flexibility for successful operations, holding that the constitution does not preclude modifications to system rights after employment and enrollment, but that it does "require that any changes in the system that operate to a given employee's disadvantage must be offset by comparable new advantages to that employee."[19]

The merits of and remedies in *Hammond* are instructive. The case involved amendments to PERS eliminating distinctions between public safety employees and other PERS participants, effectively reducing certain occupational disability and death benefits and increasing certain eligibility requirements for occupational pension benefits for the public safety employees.[20] A public safety employees' union sued, alleging the PERS changes were unconstitutional; the superior court agreed and prospectively enjoined the changes in their entirety.[21] The State argued that any benefit diminishment had been offset by other advantages from the PERS amendments and that the changes were constitutionally sound.[22]

We noted that our task on appeal was to determine whether the PERS modifications had disadvantageous effects on the public safety employees and, if so, to weigh those disadvantages against any advantages that may have accompanied them.[23]

---

[18]     (...continued)
not just dollar amounts, but "the practical effect of the whole complex of provisions" (emphasis omitted) (quoting *Opinion of the Justices*, 303 N.E.2d 320, 327 (Mass. 1973) (construing Mass. Gen. Laws ch. 32, § 25(5) (amended 1956)))).

[19]     *Hammond*, 627 P.2d at 1057.

[20]     *Id.* at 1053-54.

[21]     *Id.* at 1055.

[22]     *See id.* at 1058.

[23]     *Id.* at 1057-58.

We concluded that the superior court correctly determined that the PERS modifications were an effective diminishment of vested system rights and violated article XII, section 7 as to those public safety employees adversely affected.[24]  But we explained that the ultimate determination whether vested rights have been diminished must be made on a case-by-case basis.[25]  We specifically concluded that the superior court had erred by prospectively invalidating the PERS modifications when there would be no constitutional infirmity in applying them to persons employed and enrolled after their effective date.[26] We also noted that persons employed before the PERS modifications' effective date who wished to be covered by the new system could elect to do so.[27]  We held that the PERS modifications were only unconstitutional in relation to persons employed before the modifications' effective date who chose to receive benefits under the system in effect at the time they were hired.[28]  Thus the available remedy for the modifications' constitutional infirmity was an in-system benefits choice.[29]

More recently, in *McMullen v. Bell* we reiterated both that under the constitution the legislature may not impair accrued state retirement system benefits and that benefit rights vest on employment and enrollment.[30]  Further:

---

[24]  *Id.* at 1059.

[25]  *Id.* (citing *Betts v. Bd. of Admin. of the Pub. Emps.' Ret. Sys.*, 582 P.2d 614, 617 (Cal. 1978) (en banc)).

[26]  *Id.*

[27]  *Id.* & n.13.

[28]  *Id.* at 1059-60.

[29]  *Id.* & n.13.

[30]  128 P.3d 186, 190 (Alaska 2006).

> An employee's vested benefits arise by statute, from the regulations implementing those statutes, and from the division's practices. Where the state has changed the benefits system after an employee's enrollment in the system, the employee may choose to accept the new system or may opt to keep the benefits in effect at enrollment.[31]

This suggests Metcalfe's proper remedy is allowing him to keep the retirement benefits available to him — whatever those benefits might be — not breach of contract damages.

Although we have used contract-law principles to decide article XII, section 7 cases[32] and have even affirmed a related breach of contract finding in a case,[33] breach of contract damages are not an appropriate remedy for the alleged constitutional violation here: In *Lowell v. Hayes* we declined to allow "a constitutional claim for damages, 'except in cases of flagrant constitutional violations where little or no alternative remedies are available.' "[34] We later stated that declaratory and injunctive relief are appropriate remedies with respect to potentially unconstitutional statutes if the circumstances of the case do not meet the exception described in *Lowell v. Hayes* and

---

[31]    *Id.* at 190-91 (footnote omitted) (citing *Hammond*, 627 P.2d at 1059 (explaining employee's right to choose between benefit systems)).

[32]    *See, e.g.*, *State v. Allen*, 625 P.2d 844, 848 (Alaska 1981) (applying contract principle of "condition subsequent" to resolve article XII, section 7 claim).

[33]    *Municipality of Anchorage v. Gentile*, 922 P.2d 248, 260 n.13 (Alaska 1996) ("The trial court also held that by diminishing the medical benefits, MOA violated article XII, section 7 of the Alaska Constitution. Because the class members' [related union] contract claim fully resolves the question of whether the medical benefits vested when the covered employees retired, it is unnecessary to consider claimants' constitutional claim.").

[34]    117 P.3d 745, 753 (Alaska 2005) (quoting *Dick Fischer Dev. No. 2, Inc. v. State, Dep't of Admin.*, 838 P.2d 263, 268 (Alaska 1992)).

damages are unavailable.[35]  Our general reluctance to allow a constitutional claim for damages where other remedies exist, viewed in concert with our past article XII, section 7 decisions, convinces us that Metcalfe has no cognizable claim for breach of contract damages — Metcalfe's remedy here has been outlined in *Hammond* and *McMullen*.

Because in his current status Metcalfe has no cognizable claim for breach of contract damages, we affirm the dismissal of the claim without reaching whether the claim is barred by the statute of limitations.[36]

### 2. We remand Metcalfe's claim for declaratory and injunctive relief for further proceedings.

#### a. Statute of limitations

A declaratory judgment is neither strictly legal nor strictly equitable.[37] When deciding whether a time-limitation defense applies to a declaratory and injunctive relief claim, we have noted that courts often consider the substance of the relief sought.[38]

---

[35] *Krause v. Matanuska-Susitna Borough*, 229 P.3d 168, 175 (Alaska 2010) (reversing the dismissal of a claim for declaratory and injunctive relief, noting that the plaintiffs "are not entitled to money damages for the alleged violations of their constitutional rights, but they may seek declaratory and injunctive relief").

[36] "We may affirm a judgment on any grounds that the record supports, even if not relied on by the superior court." *Snyder v. Am. Legion Spenard Post No. 28*, 119 P.3d 996, 1001 (Alaska 2005).

[37] *See Laverty v. Alaska R.R. Corp.*, 13 P.3d 725, 730 (Alaska 2000) ("We have similarly described the Declaratory Judgment Act as adding 'another remedy to existing legal and equitable remedies.' " (quoting *Jefferson v. Asplund*, 458 P.2d 995, 997 (Alaska 1969))).

[38] *See id.* ("Courts often resolve this problem [of declaratory judgments arising either at law or equity] by looking to the circumstances surrounding the claim and applying laches if the claim would have arisen in equity before declaratory judgment was
(continued...)

We have held that equitable relief claims are not subject to statutes of limitations and are instead controlled by the doctrine of laches.[39] Aside from declaratory judgment, Metcalfe may seek only equitable relief here because, as explained above, he currently has no cognizable claim for a remedy at law.

In *State v. Alex* we considered whether time-limiting defenses applied to a suit challenging a statute's constitutionality and seeking damages, declaratory judgment, and an injunction.[40] We determined that the damages claim was governed by a statute of limitations because it was an action at law, and we found no error in the trial court's determination that the laches doctrine did not apply to the request for declaratory relief and an injunction because laches is inapplicable when relief is "prospective in application and seek[s] to prevent future threatened harm."[41] Metcalfe's claim similarly is prospective in nature and seeks to challenge future enforcement of a statute as constitutionally infirm. Laches — not a statute of limitations — is the appropriate time-limiting defense here, but, as in *Alex*, it is inapplicable to Metcalfe's claim.

It was error to dismiss Metcalfe's declaratory and injunctive relief claim as barred by AS 09.10.053.

---

[38]     (...continued)
available.").

[39]     *Moffitt v. Moffitt*, 341 P.3d 1102, 1105 (Alaska 2014) (reversing a summary judgment order concerning equitable claims because the order applied a statute of limitations to bar the claims).

[40]     646 P.2d 203, 215 (Alaska 1982).

[41]     *Id.* (stating that it was "simply inappropriate" to apply laches analysis to a declaratory judgment and injunctive relief claim challenging statute's constitutionality because relief sought was "prospective in application").

## b. Ripeness

The superior court determined that Metcalfe's claim was ripe because he alleged an injury caused by the 2005 legislation. The State challenges the superior court's determination, asserting that Metcalfe must regain a PERS-benefitted position before his claim will be ripe for decision.

"The ripeness doctrine requires a plaintiff to claim that either [an] . . . injury has been suffered or that one will be suffered in the future."[42] There is "no set formula" to identify whether a case is ripe for decision.[43] When considering a claim for declaratory relief regarding a statute's constitutionality, courts should "balance . . . the plaintiffs' 'need for decision against the risks of decision.' "[44] The "need for decision" is judged as "a function of the probability that [the plaintiff] will suffer an anticipated injury."[45] The "risks of decision" are measured "by the difficulty and sensitivity of the issues presented, and by the need for further factual development to aid decision."[46]

Here Metcalfe seeks a declaratory judgment identifying the 2005 legislation's effect on his asserted PERS rights. Although we have rejected his claim of monetary injury, Metcalfe nonetheless has raised a claim that his asserted PERS rights have been wrongfully diminished, and he has demonstrated a need for decision: As the

---

**42** *Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 359 (Alaska 2001) (citing *Bowers Office Prods., Inc. v. Univ. of Alaska*, 755 P.2d 1095, 1099 (Alaska 1988)).

**43** *Id.* at 359.

**44** *Id.* at 360 (quoting 13A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3532.1, at 115 (2d ed. 1984)).

**45** *Id.*

**46** *Id.* (citing WRIGHT, *supra* note 43, § 3532.1, at 115).

superior court recognized, Metcalfe and others in his position need to know their PERS status to make decisions about pursuing employment opportunities with the State. And, as explained above, substantial case law guides a court deciding an article XII, section 7 claim, rendering the risk of decision low. The superior court did not abuse its discretion in determining that Metcalfe's declaratory judgment claim was ripe for decision.[47]

### c.     Other issues

The superior court "tentatively" determined that Metcalfe had a vested PERS right under former AS 39.35.350 before moving on to the ripeness and statute of limitations issues. The court noted that it would need further briefing before deciding whether Metcalfe actually had a vested PERS interest in light of his complete departure from the retirement system in the 1980s. Both parties ask us to decide this question, as well as other issues that go to the merits of Metcalfe's claim that the 2005 legislation unconstitutionally diminished PERS rights. We decline the invitation because — without need for further specificity — we are divided on the fundamental question.

Although Metcalfe brought this case as a class action, the motion to dismiss preceded serious class certification efforts. Here a divided decision affirming the superior court's dismissal of Metcalfe's case on the alternative basis that Metcalfe has no vested PERS right to assert in this context — as the dissenting opinion urges — would resolve the issue for Metcalfe but not for anyone else in the putative class, and could lead to inconsistent results.[48] On the other hand, reaching out to render a divided

---

[47]     We review a superior court's decision regarding a controversy's ripeness for abuse of discretion. *Id.* at 358-59.

[48]     *See* Alaska R. App. P. 106(b) ("In an appeal that is decided with only three of five supreme court justices participating, any issue or point on appeal that the court decides by a two-to-one vote is decided only for purposes of that appeal, and shall not have precedential effect.").

decision that Metcalfe has a vested PERS right to assert in this context would not only resolve the issue in Metcalfe's favor, but also ultimately could lead to resolving the issue in the putative class's favor on remand. This seems imprudent and unfair to the State. We deem it best to allow the superior court the opportunity to resolve both the class action issues and the remaining declaratory judgment issues in the first instance.

## IV.   CONCLUSION

We AFFIRM the dismissal of Metcalfe's monetary damages claim and REMAND for further proceedings on his declaratory judgment and injunctive relief claim.

FABE, Chief Justice, concurring in part and dissenting in part.

Although I agree with the court's decision affirming on alternative grounds the superior court's dismissal of Metcalfe's claim for money damages, I respectfully disagree with the decision to remand this case to the superior court for further proceedings. In my view, the superior court's dismissal of this case in its entirety should be affirmed because article XII, section 7 of the Alaska Constitution does not encompass Metcalfe's claim. Metcalfe is not a member of PERS within the meaning of the PERS statutes, so the constitutional prohibition on impairing or diminishing membership benefits does not apply to him. The statutory change therefore falls outside the scope of Metcalfe's article XII, section 7 protections, and Metcalfe has stated no claim for relief under that provision. Because we may affirm the superior court on any grounds briefed by the parties and supported by the record,[1] I would affirm the superior court's decision to dismiss Metcalfe's claim on these alternate grounds.

By its plain terms, article XII, section 7 applies only to members of employee retirement systems: It first provides that "[m]embership in employee retirement systems of the State or its political subdivisions shall constitute a contractual relationship" before going on to explain that "[a]ccrued benefits of these systems shall not be diminished or impaired."[2] Because the provision only governs "[m]embership in employee retirement systems," the anti-diminishment provision protects only *members* of such systems.

The definition of PERS membership is governed by AS 39.35.680, which provides that the term "member" refers to "a person eligible to participate in the plan and

---

[1]  *See Snyder v. Am. Legion Spenard Post No. 28*, 119 P.3d 996, 1001 (Alaska 2005) (first citing *Marshall v. First Nat'l Bank of Alaska*, 97 P.3d 830, 835 (Alaska 2004); then citing *Ransom v. Haner*, 362 P.2d 282, 285 (Alaska 1961)).

[2]  Alaska Const. art. XII, § 7 (emphasis added).

-20-                                                      7132

who is covered by the plan," including active members as well as various categories of inactive, vested, or retired members.[3] On the other hand, the statute defines a "former member" as "an employee who is terminated and who has [requested or] received a total refund of the balance of the employee contribution account."[4] It also specifically provides that the term " 'member' . . . does not include former members."[5] A nearly identical version of this statute was in effect when Metcalfe received a refund of his retirement contributions in 1981, similarly providing that the term " 'member' . . . does not include former members," and that the term "former member" encompasses employees who have "received a total refund" of their employee contribution accounts.[6]

When a statute is clear and unambiguous, we have explained that it "will not be modified or extended by judicial construction."[7] Here, the language of AS 39.35.680 is unequivocal. And as the State correctly notes, all of our past decisions on diminishment of benefits under PERS or other public employee retirement systems have addressed the benefits of *members*.[8] We have never held that article XII, section 7

---

[3]     AS 39.35.680(22)(A)-(B).

[4]     AS 39.35.680(20).

[5]     AS 39.35.680(22)(C)(i).

[6]     Former AS 39.35.680(19), (21) (1981); *see* ch. 128, § 54, SLA 1977.

[7]     *State v. Pub. Safety Emps. Ass'n*, 93 P.3d 409, 415 (Alaska 2004) (quoting *Tesoro Petroleum Corp. v. State*, 42 P.3d 531, 537 (Alaska 2002)).

[8]     *See Alford v. State, Dep't of Admin., Div. of Ret. & Benefits*, 195 P.3d 118 (Alaska 2008) (regarding the State's recapture of early retirement benefits after members retired, retained PERS membership, and then re-entered public employment); *Bd. of Trs., Anchorage Police & Fire Ret. Sys. v. Municipality of Anchorage*, 144 P.3d 439 (Alaska 2006) (regarding "surplus benefits" for current members of the municipality's retirement system); *McMullen v. Bell*, 128 P.3d 186 (Alaska 2006) (reviewing the calculation of a
(continued...)

applies to non-members of PERS, and such a decision would contradict the clear text of AS 39.35.680 and of article XII, section 7 itself. Thus, the statutory text and our existing precedent both demonstrate that the anti-diminishment provision of article XII, section 7 does not apply to former members of PERS.

Because former members are not members of PERS within the meaning of AS 39.35.680 and the constitutional anti-diminishment provision, Metcalfe is not a member of PERS and was not a member when the disputed statute was repealed. Metcalfe chose to relinquish his membership status by taking a full refund of his PERS contributions in 1981. Using either the definition in effect at that time[9] or the definition in effect in 2005,[10] Metcalfe's decision to "receive[] a total refund" of his PERS account meant that he became a former member within the meaning of the PERS statutes. And once he had become a former member, Metcalfe could no longer claim entitlement to any

---

**8**     (...continued)
specific PERS member's benefits); *Duncan v. Retired Pub. Emps. of Alaska, Inc.*, 71 P.3d 882 (Alaska 2003) (regarding PERS and TRS members' health insurance benefits); *Municipality of Anchorage v. Gallion*, 944 P.2d 436 (Alaska 1997) (reviewing a change to the "accrued benefits" of some members of a municipal retirement plan); *Municipality of Anchorage v. Gentile*, 922 P.2d 248, 260 n.13 (Alaska 1996) (declining to consider the constitutional claim brought by members of a municipal retirement plan); *Sheffield v. Alaska Pub. Emps.' Ass'n*, 732 P.2d 1083 (Alaska 1987) (regarding a change in calculating PERS members' accrued benefits); *State ex rel. Hammond v. Allen*, 625 P.2d 844 (Alaska 1981) (reviewing the repeal of benefits for members of the Elected Public Officers' Retirement System); *Hammond v. Hoffbeck*, 627 P.2d 1052 (Alaska 1981) (reviewing a change in benefits as applied to PERS members who were adversely affected and employed on the date of the change).

**9**     Former AS 39.35.680(19) (1981).

**10**     AS 39.35.680(20).

of the benefits of PERS membership.[11] Metcalfe's right to PERS benefits thus divested at the time of his refund in 1981. So by the time the disputed change occurred in 2005, Metcalfe had not been a PERS member for roughly 24 years, and he therefore possessed no membership benefits that could have been unconstitutionally diminished by the repeal of AS 39.35.350.

In sum, because he was not a member at the time of the change, and because article XII, section 7 of the Alaska Constitution protects only the benefits of members against diminishment or impairment, Metcalfe has no claim for relief under this provision. The parties have had an opportunity to brief this issue, and "[w]e may affirm a judgment on any grounds that the record supports, even if not relied on by the superior court."[12] Here the record adequately supports the conclusion that Metcalfe's claim does not fall within article XII, section 7, because he is not a member of PERS. Accordingly, it is unnecessary to remand this case for any further factual development. Instead, I would affirm the superior court's dismissal of the case on the ground that Metcalfe has stated no claim for relief under article XII, section 7 of the Alaska Constitution.

---

[11]     *See* AS 39.35.680(22)(C)(i).

[12]     *Snyder v. Am. Legion Spenard Post No. 28*, 119 P.3d 996, 1001 (Alaska 2005) (first citing *Marshall v. First Nat'l Bank of Alaska*, 97 P.3d 830, 835 (Alaska 2004); then citing *Ransom v. Haner*, 362 P.2d 282, 285 (Alaska 1961)).