*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| PETER METCALFE, individually and on behalf of all others similarly situated, | ) ) ) | Supreme Court No. S-17157 |
| | ) | Superior Court No. 1JU-13-00733 CI |
| Appellant, | ) ) | O P I N I O N |
| v. | ) ) | No. 7512 – April 2, 2021 |
| STATE OF ALASKA, | ) ) | |
| Appellee. | ) ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Kevin Miller, Judge.

Appearances: Jon Choate, Choate Law Firm LLC, Juneau, for Appellant. Jessica M. Alloway, Senior Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Winfree, Maassen, and Carney, Justices, and Matthews and Fabe, Senior Justices.[*] [Bolger, Chief Justice, and Stowers, Justice, not participating.]

MAASSEN, Justice.
CARNEY, Justice, with whom FABE, Senior Justice, joins, dissenting.

---

[*] Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

# I. INTRODUCTION

Article XII, section 7 of the Alaska Constitution provides that the "[a]ccrued benefits" of a State employee retirement system "shall not be diminished or impaired." Members of the plaintiff class are former State employees. When they enrolled in the State employee retirement system, a statute provided that if they left eligible employment, withdrew their contributions to the system, and later returned to eligible employment, they could repay their withdrawn contributions, be reinstated to their original benefits level, and have their credited service time restored. The statute was later repealed. The superior court ruled on summary judgment that this repeal did not diminish or impair the former employees' accrued benefits and was therefore constitutional.

We conclude that the statutory reinstatement right was an accrued benefit of the retirement system protected against diminishment or impairment by article XII, section 7. We therefore reverse the superior court's judgment and remand the case for further proceedings.

# II. FACTS AND PROCEEDINGS

## A. Facts

This is the second appeal in a case challenging changes made to two of the State's employee retirement systems.[1] Public employees in the Public Employees' Retirement System (PERS) and the Teachers' Retirement System (TRS) are eligible for health, disability, and retirement benefits. Before 2005 these benefits were separated into different "tiers" depending on when an employee joined the system. When

---

[1]     This case was first appealed in *Metcalfe v. State*, 382 P.3d 1168 (Alaska 2016), *abrogated on other grounds by Hahn v. GEICO Choice Ins. Co.*, 420 P.3d 1160 (Alaska 2018).

Peter Metcalfe joined PERS in 1980 he was a member of Tier 1 — the most generous tier of benefits available to any PERS or TRS member.[2]

In 1981 Metcalfe left PERS-eligible employment and withdrew his retirement system contributions from the system.[3] He thereby became a "former member" as defined by statute.[4] Corresponding statutes were also in effect for TRS.[5] Other statutes in effect at the time — and since before Metcalfe joined PERS — provided that a former member who returned to eligible employment and repaid any refunded contributions, plus interest, would be placed back in the member's original benefits tier and credited for previous service years. Essentially, this allowed former members who returned to eligible employment to reenter PERS or TRS as if they had never left. Reinstatement of prior benefits tier and credited service was provided by former AS 39.35.350 for PERS members[6] and former AS 14.25.062 for TRS members.[7]

---

[2] Public employees who joined PERS or TRS between January 1, 1961, and June 30, 1986, are eligible for "Tier 1 benefits."

[3] *See* AS 39.35.200(a) (providing that inactive PERS employees are "entitled to receive a refund of the balance of the employee contribution account").

[4] *See* AS 39.35.680(20) (defining PERS "former member" as "employee who is terminated and who has received a total refund of the balance of the employee contribution account").

[5] AS 14.25.150(a) (providing that terminated TRS employees are "entitled to a refund of the balance of the member contribution account"); AS 14.25.220(18) (defining TRS "former member").

[6] *See* former AS 39.35.350(b) (1980) ("An employee may reinstate credited service associated with a refund by repaying the total amount of the refund. Interest will accrue from the date of the refund until repayment of the refund or retirement, whichever occurs first."), *repealed by* ch. 9, § 133, FSSLA 2005.

[7] *See* former AS 14.25.062 (1980), *repealed by* ch. 9, § 133, FSSLA 2005.

The Alaska Legislature made changes to PERS and TRS in 2005, including closing the existing tiers to new members and creating a defined contribution plan.[8] Alaska Statutes 39.35.350 and 14.25.062 were repealed effective June 30, 2010.[9] Former members were granted a five-year period to return to eligible employment and repay their refunded contributions if they intended to take advantage of the reinstatement provided by the repealed statutes.[10] Failure to act during this five-year period resulted in the permanent forfeiture of their previously credited service.[11] The legislative changes provided no benefit to members specifically intended to offset this apparent detriment.

Metcalfe did not return to eligible employment in the five-year period. In 2012 he inquired about his eligibility for PERS retirement benefits, and the Division of Retirement and Benefits notified him that, because of the repeal of AS 39.35.350, he was "not eligible to reinstate [his prior] service, [and] any entitlement based on [his] prior PERS service [was] forfeit."

B.     Proceedings

In 2013 Metcalfe filed a complaint in the superior court alleging that the repeal of AS 39.35.350 and AS 14.25.062 violated his rights and those of other similarly situated persons protected by article XII, section 7 of the Alaska Constitution. The superior court dismissed Metcalfe's claims for contract damages and for declaratory and injunctive relief as time-barred.[12] Metcalfe appealed. We affirmed the dismissal of

---

[8]     Ch. 9, § 122, FSSLA 2005; *see* AS 39.35.710.

[9]     *See* ch. 9, §§ 133, 149, FSSLA 2005.

[10]    *See id.*

[11]    *See id.*

[12]    *Metcalfe v. State*, 382 P.3d 1168, 1170-71 (Alaska 2016), *abrogated on*
(continued...)

Metcalfe's contract damages claim on the ground that the remedy it sought was not appropriate for a violation of article XII, section 7; the proper remedy, rather, was recognition of the constitutionally protected contract.[13] We reversed the dismissal of the declaratory and injunctive relief claim and remanded for further proceedings, holding that the claim was not time-barred and that the superior court did not abuse its discretion in determining that the claim was ripe for review.[14] We declined to answer whether Metcalfe had a vested PERS right under former AS 39.35.350 until "the superior court [had] the opportunity to resolve both the class action issues and the remaining declaratory judgment issues in the first instance."[15]

Following remand the superior court certified the case as a class action.[16] The State filed a motion for summary judgment, which the court granted. The court reasoned that (1) the protections of article XII, section 7 apply only to *members* of State retirement systems, and because Metcalfe and the class are statutorily defined as "former members" their claims are not protected; and (2) the repeal of reinstatement of credited

---

[12]     (...continued)
*other grounds by Hahn v. GEICO Choice Ins. Co.*, 420 P.3d 1160 (Alaska 2018).

[13]     *Id.* at 1175; *see also infra* section IV.B.

[14]     *Metcalfe*, 382 P.3d at 1175-77.

[15]     *Id.* at 1177.

[16]     The class is defined to include "[e]very person who became [a PERS or TRS] member between January 1, 1961 and July 27, 2005 who, at some point, left PERS or TRS qualifying employment, took a refund of their retirement contributions to PERS or TRS, and did not return to PERS or TRS qualifying employment before June 30, 2010."

service did not diminish or impair an "accrued benefit" of a state employee retirement system. Metcalfe appeals on behalf of the class.[17]

## III.    STANDARD OF REVIEW

"We review a grant of summary judgment de novo."[18] "We will affirm a grant of summary judgment 'when there are no genuine issues of material fact, and the prevailing party . . . [is] entitled to judgment as a matter of law.' "[19] "We review de novo questions of law, including constitutional questions . . . . In de novo review we apply our independent judgment and 'adopt the rule of law that is most persuasive in light of precedent, reason, and policy.' "[20]

## IV.    DISCUSSION

### A.    Overview Of Article XII, Section 7

Article XII, section 7 of the Alaska Constitution, entitled "Retirement Systems," provides: "Membership in employee retirement systems of the State or its political subdivisions shall constitute a contractual relationship. Accrued benefits of these systems shall not be diminished or impaired." Interpreting this provision, we have described retirement benefits as a form of deferred compensation, "an element of the bargained-for consideration given in exchange for an employee's assumption and

---

[17]    Because Metcalfe was a PERS member our discussion focuses on the PERS statutes, though Metcalfe represents former members of both PERS and TRS.

[18]    *Achman v. State*, 323 P.3d 1123, 1126 (Alaska 2014) (quoting *Kalenka v. Jadon, Inc.*, 305 P.3d 346, 349 (Alaska 2013)).

[19]    *Id.* (quoting *Fraternal Order of Eagles v. City & Borough of Juneau*, 254 P.3d 348, 352 (Alaska 2011)).

[20]    *Ebli v. State, Dep't of Corr.*, 451 P.3d 382, 387 (Alaska 2019) (citation omitted) (quoting *Fraternal Order of Eagles*, 254 P.3d at 352).

performance of the duties of his employment."[21]  An individual's rights in the retirement system therefore vest upon the individual's employment and enrollment in the system.[22]

"Our case law suggests that 'accrued benefits' should be defined broadly."[23] Accrued benefits "include[] all retirement benefits that make up the retirement benefit package that becomes part of the contract of employment when the public employee is hired"[24] — "not just dollar amounts, but 'the practical effect of the whole complex of provisions.' "[25]  Accrued benefits "arise by statute, from the regulations implementing

---

[21]     *Hammond v. Hoffbeck*, 627 P.2d 1052, 1056-57 (Alaska 1981).

[22]     *Id.* at 1057.

[23]     *Duncan v. Retired Pub. Emps. of Alaska, Inc.*, 71 P.3d 882, 887 (Alaska 2003).

[24]     *Id.* at 888.

[25]     *Metcalfe v. State*, 382 P.3d 1168, 1174 n.18 (Alaska 2016) *abrogated on other grounds by Hahn v. GEICO Choice Ins. Co.*, 420 P.3d 1160 (Alaska 2018) (quoting *Sheffield v. Alaska Pub. Emps.' Ass'n*, 732 P.2d 1083, 1087 (Alaska 1987)). Seven state constitutions explicitly provide contractual protection for state retirement benefits; *see* Anna K. Selby, Note, *Pensions in a Pinch: Why Texas Should Reconsider Its Policies on Public Retirement Benefit Protection*, 43 TEX. TECH L. REV. 1211, 1232 (2011).  The New York and Illinois constitutions protect "benefits," a term construed to mean both benefits already earned and those to be earned in the future.  *Id.* at 1233.  The Michigan, Louisiana, and Hawaii constitutions "each contain a provision protecting employees' 'accrued benefits,' which are construed to include only the already earned benefits of retirement members."  *Id.* at 1233-34.  Although Alaska's article XII, section 7 uses the narrower term "accrued benefits," we interpret this provision broadly, following New York's and Illinois's stricter protection encompassing both previously earned and future earned benefits; *see Sheffield*, 732 P.2d at 1087-88 (discussing *Birnbaum v. N.Y. State Teachers' Ret. Sys.*, 152 N.E.2d 241 (N.Y. 1958)); *Hammond*, 627 P.2d at 1056 & n.8 (citing Illinois and New York law in rejecting "[t]he rule that regards members' rights in public employees' benefits systems as vested only at the time at which an individual employee is eligible to receive payment of those benefits"); *see*

(continued...)

those statutes, and from the [Division of Retirement and Benefits'] practices."[26]

When determining whether accrued benefits have been diminished or impaired for purposes of article XII, section 7, we disregard "the form of the change . . . in favor of its impact."[27] We have found constitutional violations in changes to eligibility rules,[28] the method of calculating benefits,[29] the financial soundness of the benefits system,[30] and the level of health care coverage provided.[31]

Notwithstanding our liberal interpretation of article XII, section 7, "[w]e recognize[] that retirement systems require some flexibility for successful operations," and we have followed the so-called "California Rule" to "hold[] that the constitution does not preclude modifications to system rights after employment and enrollment."[32] But any changes that disadvantage employees "must be offset by comparable new

---

[25] (...continued) *also* Selby, *supra* at 1233.

[26] *McMullen v. Bell*, 128 P.3d 186, 190-91 (Alaska 2006).

[27] *Sheffield*, 732 P.2d at 1087.

[28] *Hammond*, 627 P.2d at 1058-59.

[29] *Flisock v. State, Div. of Ret. & Benefits*, 818 P.2d 640, 643-44 (Alaska 1991).

[30] *Municipality of Anchorage v. Gallion*, 944 P.2d 436, 442-44 (Alaska 1997).

[31] *Duncan v. Retired Pub. Emps. of Alaska, Inc.*, 71 P.3d 882, 886-89 (Alaska 2003).

[32] *Metcalfe v. State*, 382 P.3d 1168, 1174 (Alaska 2016). *See generally* Amy B. Monahan, *Statutes as Contracts? The "California Rule" and Its Impact on Public Pension Reform*, 97 Iowa L. Rev. 1029, 1036, 1071 (2012) (explaining "California Rule" and discussing state cases citing it with approval).

advantages";[33] if they are not, disadvantaged employees "may choose to accept the new system or may opt to keep the benefits in effect at enrollment."[34]

**B.     The Repeal Of The Reinstatement Provision Diminished Or Impaired An Accrued Benefit Of The Retirement System.**

Under our consistent interpretations of article XII, section 7, the repeal of the statutory right of reinstatement diminished Metcalfe's accrued benefits. Alaska Statute 39.35.350 was in effect at the time he entered State employment.[35] It provided a clear benefit: the opportunity for him to leave State employment, withdraw his PERS contributions, then repay the contributions and reinstate his credited service if he was again employed by the State. Metcalfe, and other persons considering the advantages and disadvantages of State employment while the statute was in effect, could reasonably rely on this provision when making important employment decisions. The statutory option was "an element of the bargained-for consideration" the State gave "in exchange for [Metcalfe's] assumption and performance of the duties of his employment."[36] And for purposes of the article XII, section 7 protection, the benefit became an "accrued benefit" as soon as Metcalfe became employed and enrolled in the system.[37]

---

[33]     *Hammond*, 627 P.2d at 1057; *see also Alford v. State, Dep't of Admin., Div. of Ret. & Benefits*, 195 P.3d 118, 123 (Alaska 2008) (stating that in *Hammond* we held that "an employee must be allowed to choose which system he or she desires to come under if the state does not provide an offsetting advantage").

[34]     *McMullen v. Bell*, 128 P.3d 186, 191 (Alaska 2006).

[35]     *See* former AS 39.35.350 (1977).

[36]     *See Hammond*, 627 P.2d at 1056.

[37]     *See id.* at 1057.

The State makes a number of arguments against this conclusion. It initially argues that the reinstatement provision "was not a benefit of [employees'] 'membership' in PERS" but rather "an employment benefit," because it was a right that only an active employee could exercise. The State argues that we have applied the protection of article XII, section 7 only to "benefits offered to members *during their retirement.*" (Emphasis in original.) But AS 39.35.350 was a part of the PERS statutes and granted a reinstatement opportunity that could be exercised only by individuals who had been members of PERS; it was plainly a benefit that came with PERS membership.[38] And the State's argument simply does not square with our consistent interpretation of article XII, section 7 as protecting "the practical effect of the whole complex of provisions."[39] Regardless of when the option is exercised, reinstating employees to their former benefits tier, with restoration of their credited service time, has a "practical effect" on retirement benefits at their most fundamental: it increases "the dollar amount of the benefits payable."[40]

The State argues that we have historically looked to California case law in interpreting article XII, section 7, and at oral argument it cited *Cal Fire Local 2881 v. California Public Employees' Retirement System*[41] in support of its position that the anti-diminishment clause applies only to "deferred compensation" as narrowly defined. In

---

[38] *See McMullen*, 128 P.3d at 190-91 ("An employee's vested benefits arise by statute, from the regulations implementing those statutes, and from the [Division of Retirement and Benefits'] practices.").

[39] *See Sheffield v. Alaska Pub. Emps.' Ass'n*, 732 P.2d 1083, 1087 (Alaska 1987) (emphasis omitted) (quoting *Opinion of the Justices*, 303 N.E.2d 320, 327 (Mass. 1973)).

[40] *See id.* (quoting *Hammond*, 627 P.2d at 1058).

[41] 435 P.3d 433 (Cal. 2019).

our seminal case *Hammond v. Hoffbeck* we looked to California's " 'limited vesting' approach" to determine the extent to which the legislature may modify vested rights,[42] but important constitutional differences prevent us from following California law uniformly. California lacks a constitutional provision specific to state retirement systems; it instead applies the protection of its contracts clause to some terms and conditions of public employment — but only as "the exception, rather than the rule."[43] The referenced "rule" — the starting point when California courts analyze legislative changes to state employee retirement systems — is this: "The terms and conditions of public employment are ordinarily considered to be statutory rather than contractual, and they are subject to modification at the discretion of the governing legislative body."[44] Article XII, section 7 of the Alaska Constitution is directly to the contrary: "Membership in employee retirement systems of the State . . . *shall constitute a contractual relationship*." (Emphasis added.) Thus, although California's case law helped us decide the extent to which the legislature could modify "vested contractual pension rights," as discussed above,[45] the very language of our constitution prevents us from relying on California law when deciding which rights are vested in the first place.

The dissenting opinion argues that we should define "deferred compensation" like the California Supreme Court did in *Cal Fire Local 2881*. But as noted above, California affords constitutional protection to only some retirement

---

[42]    627 P.2d at 1057.

[43]    *Cal Fire Local 2881*, 435 P.3d at 442.

[44]    *Id.* at 437; *see also id.* at 442-43 ("[T]he fundamental principle [is] that the terms and conditions of public employment, to the extent those terms and conditions derive from legislative enactments, are not generally protected by the contract clause from repeal or revision at the discretion of the legislative body.").

[45]    *See Hammond*, 627 P.2d at 1057.

benefits: those that are (1) manifestly intended by the legislature to be contract rights or (2) implied contract rights.[46] Implied contract rights in the California system are said to be benefits involving an element of "deferred compensation" in the sense that they are "roughly proportional to the time of . . . service."[47] By contrast, all public retirement benefits in Alaska are contractually based and constitutionally protected, and they accrue when an employee begins work as a member of a retirement system, not after a particular period of service. It would therefore make no sense for us to use the term "deferred compensation" to distinguish protected from unprotected benefits.[48] To use the term as the dissenting opinion advocates would create a new category of retirement benefits that are not constitutionally protected, which would be contrary to article XII, section 7 and the case law interpreting it.

The State also argues that Alaska's constitutional protection does not extend to the reinstatement right because article XII, section 7 protects the "contractual relationship" and there is no contract for reinstatement "until the former member return[s] to public employment and beg[ins] the reinstatement process." The State contends that AS 39.35.350 was simply an offer to contract again in the future under specified terms (return of withdrawn contributions in exchange for reinstatement to the previous benefits tier and restoration of credited service time) and that the offer could be revoked any time before it was accepted. But this argument confuses the initial contract of employment — which promised the reinstatement right — and the later exercise of that right. The conditional reinstatement right was a part of the PERS "complex of

---

[46] 435 P.3d at 443-49.

[47] *Id.* at 448.

[48] Indeed, in *Hammond* we used the term comprehensively and without limitation to refer to "benefits under PERS." *Hammond*, 627 P.2d at 1057.

provisions" at the time of Metcalfe's initial employment and became an "accrued benefit" at that time.

The State further argues for a distinction between former members like Metcalfe and "inactive members" — employees who are no longer employed by the State but who have not withdrawn their contributions from the system.[49] The State argues that inactive members are legitimately eligible to take advantage of reinstatement of credited service because, by leaving their contributions in the system, they gave "sufficient consideration" to make the State's reinstatement "offer" irrevocable. But the State's "offer" was irrevocable when the employee accepted State employment in objective reliance on the promise that conditional reinstatement and restoration of credited service time were among the benefits of enrollment in the system. The employee's contributions to the system were not necessary to maintain the offer's irrevocability; consideration for that benefit, like every other benefit of the system, was simply the "employee's assumption and performance of the duties of his [or her] employment."[50] It was 40 years ago that we rejected the notion that "members' rights in public employees' benefits systems . . . vested only at the time at which an individual employee is eligible to receive payment of those benefits."[51] The concept of a "revocable offer" does not fit comfortably with our consistent descriptions of the reach of article XII, section 7. In short, the right to conditional reinstatement and the restoration of credited service did not vest only when the former employee sought to exercise it; it vested when the State made the promise as an inducement to employment and the

---

[49]     *Compare* AS 39.35.680(21) (defining "inactive member"), *with* AS 39.35.680(20) (defining "former member").

[50]     *See Hammond*, 627 P.2d at 1056.

[51]     *See id.*

employee accepted it by beginning work and enrolling in the system.[52]

### C. An Accrued Benefit Available Only To Former Members Cannot Be Extinguished By A Legislative Determination That Former Members Are Not Entitled To Take Advantage Of It.

Because Metcalfe left public employment and took a refund of his retirement contributions, he is statutorily defined as a "former member" of PERS.[53]  A "former member" is specifically excluded from the definition of "member" in the PERS statutes.[54]  The superior court relied on these statutory definitions in rejecting Metcalfe's claim, reasoning that as a "former member" he was not within the class of persons protected by article XII, section 7.  The State urges the same interpretation, as did the dissent in this case's first appeal.[55]  The dissent reasoned that "[b]ecause the provision only governs '[m]embership in employee retirement systems,' the anti-diminishment

---

[52]     Further, we see no reason why PERS members would understand that leaving contributions in the system was necessary consideration for keeping the State's conditional reinstatement offer open, as former AS 39.35.350 expressly said the opposite:  "An employee may reinstate credited service associated with a refund by repaying the total amount of the refund."

[53]     *See* AS 39.35.680(20) (defining "former member" as "an employee who is terminated and who has received a total refund of the balance of the employee contribution account or who has requested in writing a refund of the balance in the employee contribution account").

[54]     AS 39.35.680(22)(C)(i) (specifying that definition of "member" excludes "former members"); *see* AS 39.35.680(22)(A) (defining "member" as "a person eligible to participate in the plan and who is covered by the plan").

[55]     *Metcalfe v. State*, 382 P.3d 1168, 1177-79 (Alaska 2016) (Fabe, C.J., concurring in part and dissenting in part), *abrogated on other grounds by Hahn v. GEICO Choice Ins. Co.*, 420 P.3d 1160 (Alaska 2018).

provision protects only *members* of such systems."[56]  The dissent concluded:  "Metcalfe is not a member of PERS within the meaning of the PERS statutes, so the constitutional prohibition on impairing or diminishing membership benefits does not apply to him."[57]  Today's dissent takes the same view.[58]

The flaw with this reasoning is two-fold:  both in its strained reading of the plain language of article XII, section 7 and in its assumption that the legislature can narrow the constitution's reach by statute.  First, article XII, section 7 does not protect only the rights of "members"; it protects the rights of individuals who accrued benefits because of their membership in a State employee retirement system.  And second, whether or not an individual is a "member" as that term is statutorily defined (and as it may be redefined from time to time by future legislatures), an individual with an accrued benefit in a State retirement system has a constitutional right that the benefit "not be diminished or impaired" by subsequent legislation.

We thus agree with Metcalfe that "the key determination for whether an individual has standing to claim article XII, section 7 protection is whether they have a vested right to a benefit *generated* by membership in the State's public retirement systems."  (Emphasis in original.)  There will certainly be cases when current membership is dispositive of a former member's rights because the right to the benefit was extinguished when the member left the system; this would be the case, for example, if Metcalfe, as a former member, were trying to claim health benefits under PERS.  But that is not his claim.  The benefit Metcalfe is claiming is one that was promised would be available to him *only* if he first became a "former member."  To say that he cannot

---

[56]     *Id.* at 1178 (second alteration in original) (emphasis in original).

[57]     *Id.* at 1177.

[58]     Dissent at 19.

claim the benefit *because* he is a former member is plainly to render the State's promise illusory and to diminish or impair the promised benefit.[59]

Lastly, allowing the State to take back its promise of conditional reinstatement and restoration of credited service time would undermine one of the primary purposes of state employee retirement systems: "to induce persons to enter and continue in public service."[60] This inducement works in the long term only if employees can trust the State's promise that the accrued benefits of system membership will not be diminished or impaired. Article XII, section 7 ensures that the State's promises are kept.

## V. CONCLUSION

We REVERSE the superior court's summary judgment order and REMAND for further proceedings consistent with this opinion.

---

[59] The dissenting opinion's two examples "in which the former member of a relationship or organization has . . . clearly disavowed any intention to regain membership" — a divorced spouse and "a ballplayer who quit the team" (Dissent at 24, n.25) — omit the determinative context: the existence of an agreement that clearly spells out what happens if the "former member" *does* seek "to regain membership."

[60] *See State v. Allen*, 625 P.2d 844, 846 (Alaska 1981).

CARNEY, Justice, with whom FABE, Senior Justice, joins, dissenting.

I respectfully disagree with the court's decision reversing summary judgment and remanding this case to the superior court for further proceedings. I would affirm summary judgment because "article XII, section 7 of the Alaska Constitution does not encompass Metcalfe's claim."[1] The Alaska constitution does not protect the statutory right at issue; and, as the court acknowledges, "Metcalfe is not a member of PERS."[2]

The statutes in effect when Metcalfe was hired provided "former members" with the opportunity to return to PERS membership at the same benefits level if the former member obtained state employment and repaid the funds that had been withdrawn with interest.[3] For more than two decades, Metcalfe apparently made no effort to take advantage of that opportunity.

In 2005 the Legislature dramatically restructured the entire state retirement system.[4] One piece of the legislative restructuring was the repeal of the statute allowing "former members" to regain their PERS membership by "buying back" their previous benefit level.[5] The Legislature included a five-year grace period, enabling "former members" to exercise their option to return to state employment and to regain their previous PERS benefit level by repaying their withdrawn funds with interest.[6] Despite

---

[1]     *Metcalfe v. State*, 382 P.3d 1168, 1177 (Alaska 2016) (Fabe, C.J., concurring in part and dissenting in part).

[2]     *Id.*

[3]     *See* former AS 39.35.350(b) (1980).

[4]     *See* ch. 9, FSSLA 2005.

[5]     *See* ch. 9, § 133, FSSLA 2005 (repealing former AS 39.35.350).

[6]     *See id.* § 149 (providing that repeal of AS 39.35.350 would take effect in
(continued...)

receiving notice, Metcalfe did not exercise that option before 2010, when the grace period expired.

Instead Metcalfe waited another two years before "inquiring" about his PERS status. After being informed that he was not a member of PERS, Metcalfe waited another year before filing the complaint that eventually led to today's decision. I do not think Metcalfe and other similarly situated individuals are entitled to constitutional protection under these circumstances.

I am not convinced that the statutory right to quit, cash out all retirement contributions, and later buy back into the retirement system at a certain level is an "accrued benefit" within the meaning of that term in the constitution. Like the court I recognize we have defined "accrued benefits" broadly, including "all retirement benefits that make up the retirement benefit package."[7] But I disagree that the right to return to PERS at a particular level after a voluntary decision to cash out of and relinquish membership in PERS is part of a member's "retirement benefit package." We have never held that a plaintiff without contributions and corresponding funds designated for his or her eventual benefit in a retirement system has a claim under article XII, section 7.[8] And

---

[6]     (...continued)
2010).

[7]     Op. at 7.

[8]     *See McMullen v. Bell*, 128 P.3d 186, 190-91 (Alaska 2006) (agreeing individual with contributions in PERS "ha[d] a right to have his benefits determined under the law and practices that were in effect when he was hired"); *Bartley v. State, Dep't of Admin., Teacher's Ret. Bd.*, 110 P.3d 1254, 1265 (Alaska 2005) (holding teachers with contributions in TRS were "constitutionally entitled to have their pension benefits calculated under the law in effect when they joined TRS"); *Duncan v. Retired Pub. Emps. of Alaska, Inc.*, 71 P.3d 882, 885 (Alaska 2003) (holding employees with contributions in PERS were also entitled to promised health insurance coverage); (continued...)

that is precisely the issue in this case: Metcalfe asserts that the now-repealed statutory right to reenter the PERS system *is* the constitutionally protected benefit, even though he currently has no funds in PERS. Because Metcalfe has no contributions in the system or funds designated for his benefit, he has no accrued benefits that can be impaired and therefore no claim under article XII, section 7.

The court apparently agrees with Metcalfe that the statutory right, standing alone, is a constitutionally protected benefit of the PERS retirement benefit system. The court reasons that the statutory right is an accrued benefit because it was part of the consideration that induced Metcalfe to state employment in the first place and because Metcalfe "could reasonably rely on this provision when making important employment decisions."[9]

---

[8]      (...continued)
*Municipality of Anchorage v. Gallion*, 944 P.2d 436, 444-45 (Alaska 1997) (holding employees with contributions in municipal retirement systems were entitled to have financial soundness of plans evaluated and maintained separately from other plans); *Flisock v. State, Div. of Ret. & Benefits*, 818 P.2d 640, 643 (Alaska 1991) (holding teacher with contributions in TRS had right to benefits calculated according to law in existence when employment began); *Sheffield v. Alaska Pub. Emps. Ass'n*, 732 P.2d 1083, 1089 (Alaska 1987) (holding individual with contributions in PERS was entitled to have funds calculated by actuarial table that existed when employment began); *Hammond v. Hoffbeck*, 627 P.2d 1052, 1059 (Alaska 1981) (holding employees with contributions in PERS were entitled to "benefits under the system in effect at the time they were hired"); *State v. Allen*, 625 P.2d 844, 849 (Alaska 1981) (holding elected officials "participating in [legislative retirement system] at the time repeal became effective . . . [were] entitled to the benefits provided by that system upon retirement").

[9]      Op. at 9.

In *Hammond v. Hoffbeck* we addressed when the right to benefits in a public retirement system vest.[10] We held that benefits within a public retirement system vest when employment begins because benefits are "an element of the bargained-for consideration given in exchange for an employee's assumption and performance of the duties of his employment."[11] It was undisputed that the PERS funds at issue were capable of constitutional protection. We have thus determined *when* constitutional protection begins, but that does not necessarily determine *whether* something is an accrued benefit in a retirement system. In *Hammond* we recognized that benefit plans aim to do more than induce people to state employment; they also seek to retain employees over time and to induce employee reliance on the eventual retirement income.[12] In recognition of PERS's multiple goals, we have held that the constitution protects "system benefits offered to retirees when an employee is first employed *and as improved during the employee's tenure*."[13]

---

[10]     627 P.2d at 1056-57.

[11]     *Id.* at 1056.

[12]     *Id.* at 1057 n.10 ("The universally recognized primary objectives of retirement plans are to enable the employer to attract better employees, to reduce turnover, to facilitate orderly retirement of older employees, to retain valuable employees who might seek more productive employment elsewhere, and, most importantly from the employee viewpoint, to assure a measure of income upon retirement adequate to allow the annuitant to live in reasonable security." (quoting Rubin G. Cohn, *Public Employee Retirement Plans — The Nature of the Employees' Rights*, 1968 UNIV. ILL. L. FORUM 32, 40-41 (1968))).

[13]     *Duncan*, 71 P.3d at 888.

Even if Metcalfe may have relied on the statutory provision,[14] his reliance is significantly different than reliance on a retirement system in which one has contributions and funds designated for his or her benefit. For example, if an employer changed the way employment benefits are calculated to reduce the amount of benefits paid to a now-retired employee,[15] the retired employee's reliance on the previous method of calculating affects the retired employee in several ways. First, the method of calculation, as part of the retirement package, may have induced acceptance of the job. Second, the employee contributed money to the fund with the expectation of eventually receiving an amount, based on the calculation method, in return. Finally, the employee may have foregone putting additional money away for retirement based on an expectation of the amount of funds that would be received based on the calculation method. On the other hand, while the existence of the statutory right may have induced Metcalfe to take a job with the State, it did not encourage him to continue his employment (and to keep contributing to the fund), and it did not induce him to forego his own retirement planning. (If it did lead him to forego planning for retirement, his reliance would be unreasonable because his ability to return to State employment was not entirely within his control.)

In light of the significant substantive differences between this claimed benefit and those we have previously addressed, I disagree with the court that the statutory right is a constitutionally protected accrued benefit.

---

[14]     And his failure to take any step to reinstate his PERS membership for decades makes his reliance questionable.

[15]     These facts were at issue in *Flisock v. State, Div. of Ret. & Benefits*, 818 P.2d 640, 643 (Alaska 1991).

We have historically referred to California's interpretation of its similar constitutional clause when we have interpreted article XII, section 7.[16] The California supreme court recently reached a conclusion similar to mine. In *Cal Fire Local 2881 v. California Public Employees' Retirement System* the court upheld the constitutionality of the legislature's decision to withdraw the statutory right to buy additional years of service in the public employee retirement plan because that right was not "deferred compensation."[17] The court explained that payment of pension benefits was constitutionally protected based upon its recognition that "a public employee 'is not fully compensated upon receiving his salary payments because, in addition, he has then earned certain pension benefits, the payment of which is to be made at a later date.' " In contrast, the right to purchase additional years of service was not earned over time by an employee's work. The court therefore concluded that the statutory right was not a form of deferred compensation.[18]

---

[16] *See Duncan*, 71 P.3d at 889 n.26; *Hammond*, 627 P.2d at 1057.

[17] 435 P.3d 433, 449, 454 (Cal. 2019). The court today dismisses this case by suggesting that California courts always defer to the legislature because "[t]he terms and conditions of public employment are ordinarily considered to be statutory rather than contractual, and [thus] subject to modification at the discretion of the governing legislative body." Op. at 11. But the California court pointed out that "[c]onstitutional protection can arise, however, . . . *when . . . contractual rights are implied as a result of the nature of the employment benefit, as is the case with pension rights*." *Cal Fire Local 2881*, 435 P.3d at 437 (emphasis added).

[18] The court carefully noted that the benefits of individuals who had already purchased additional service were not at issue, only whether the right to purchase additional years of service was itself a benefit. *Id.* at 444.

In *Hammond* we "h[e]ld that benefits under PERS are in the nature of deferred compensation."[19] But the right to return to the PERS system, like the right to purchase additional years of service, is not a form of deferred compensation. Like the right to purchase additional years of service, the statutory right was not related to employment service performed or the amount of contributions made to the fund. And like the right to purchase additional service years, the statutory right did not induce the same magnitude of reliance as standard retirement benefits, such as the payment of pension funds.[20]

That Metcalfe is no longer a PERS member also informs my conclusion that the statutory right is not an accrued benefit meriting constitutional protection. The court acknowledges that Metcalfe, and the rest of the class, are "former members" of PERS, as the superior court found.[21] And "former members" are specifically excluded from membership in PERS.[22] Both the current statutory framework and that in effect when

---

[19]     627 P.2d at 1057.

[20]     The court asserts that it is not appropriate to describe constitutionally protected benefits as deferred compensation because "all public retirement benefits in Alaska are contractually based and constitutionally protected." Op. at 12. But that assertion assumes its conclusion: it does not analyze or explain why the statutory right is a "public retirement benefit" under our precedent.

[21]     Op. at 3.

[22]     *See* AS 39.35.680(22)(C)(i) (providing that the definition of " 'member' . . . does not include former members").

Metcalfe was hired in 1980 contained this exclusion.[23]  And he became a "former member" when he withdrew all of the funds from his PERS account in 1981.[24]

It is difficult to conceive of a scenario in which the former member of a relationship or organization in any arena has more clearly disavowed any intention to regain membership.[25]  Yet the court accords Metcalfe the same benefits as those who not only did not so clearly disavow membership, but who seized the opportunity offered to return to active PERS membership.  The court does not explain why article XII, section 7 would accord Metcalfe, with no benefits in the retirement system aside from his alleged statutory benefit, and a PERS member, with contributions in the system and benefits designated for that member's behalf, the same protection.

In doing so, the court pays slight heed to the importance of actual membership in PERS or to its legal definition.  Our constitution protects only members of employee retirement systems:  "*Membership* in employee retirement systems of the

---

[23]      *Compare* AS 39.35.680(22)(C)(i), *with* former AS 39.35.680 (21) (1981). *See also Metcalfe v. State*, 382 P.3d 1168, 1178 (Alaska 2016) (Fabe, C.J., concurring in part and dissenting in part).

[24]      *See* AS 39.35.680(20); former AS 39.35.680(19) (1981) (defining former member).

[25]      A divorced party may not "buy back" into a former spouse's inheritance many years after their divorce was finalized; nor may a ballplayer who quit the team, took her ball, and went home demand a share of the team's championship pay won decades later.

The court asserts that these examples "omit the determinative context:  the existence of an agreement that clearly spells out what happens if the 'former member' *does* seek to 'regain membership.' "  Op. at 16 note 59.  But it is not clear this "determinative context" exists.  The court summarily concludes the statutory benefit is part of a *constitutionally protected* agreement simply because the statute was in effect when Metcalfe was hired and Metcalfe could have relied on it.

State . . . shall constitute a contractual relationship" and the "[a]ccrued benefits of these systems shall not be diminished or impaired."[26] The statutes at issue clearly and unambiguously exclude former members like Metcalfe from membership.[27] And as the dissent pointed out in our previous consideration of Metcalfe's claims, "all of our past decisions on diminishment of benefits under PERS or other public employee retirement systems have addressed the benefits of *members.*"[28] But Metcalfe disclaimed any membership, removed his contributions from the system, and needed the State's agreement before he could become a member again.[29]

Because the statutory right is not an accrued benefit and Metcalfe is no longer a PERS member, I disagree with the court's opinion.

---

[26] Alaska Const., art. XII, § 7 (emphasis added); *see also Metcalfe*, 382 P.3d at 1177 (Fabe, C.J., concurring in part and dissenting in part).

[27] *See* AS 39.35.680(19), (22)(C)(i); former AS 39.35.680(19), (21)(C)(i) (1981); *see also Metcalfe*, 382 P.3d at 1178 (Fabe, C.J., concurring in part and dissenting in part).

[28] *Metcalfe*, 382 P.3d at 1178 (Fabe, C.J., concurring in part and dissenting in part) (emphasis in original).

[29] *See McMullen v. Bell*, 128 P.3d 186, 192-93 (Alaska 2006) (concluding that employee did not have right to retirement fund calculation that included cashed-in leave based in part on board finding that employee "did not have any *reasonable expectation* that he would be able to include cashed-in leave when calculating his retirement benefits" and that "it never occurred to [employee] that cashed-in leave might be included when calculating retirement benefits" (emphasis added)); *Municipality of Anchorage v. Gallion*, 944 P.2d 436, 443-44 (Alaska 1997) ("[W]hether or not members of Plans I and II expected when they enrolled to share in any surplus by an increase in benefits, they *reasonably could have expected* that the product of their contributions would be used for their ultimate benefit." (emphasis added)).